**UNIVERSAL OIL PRODUCTS CO. v. WINKLER–KOCH ENGINEERING CO. et al.**

**No. 10744.**

District Court, N. D. Illinois, E. D.

April 18, 1939.

Judah, Reichmann, Trumbull, Cox & Stern, of Chicago, Ill., for plaintiff.

Ames, Thiess, Olson & Mecklenburger, of Chicago, Ill., for defendants.

HOLLY, District Judge.

This is an action in which plaintiff charges an infringement of a patent for cracking oil in producing gasoline. Defendant Winkler-Koch Engineering Company was not served and the case has proceeded against defendant Globe Oil and Refining Company alone.

By amendment to the original complaint plaintiff set up a decree entered in a case tried in the District Court for the Eastern District of Delaware in an action by plaintiff here against Root Refining Company which plaintiff avers adjudicated all questions which are raised on behalf of said defendant in this case, and which, by reason of the participation in that case of said defendant here, bars defendant from putting in issue here the issues decided there and raised by said defendant here. At the request of plaintiff a preliminary hearing on that question was granted.

Plaintiff, hereinafter referred to as Universal, is the owner of two patents, one issued to Carbon P. Dubbs, No. 1,-392,629, and one issued to Gustav Egloff, No. 1,537,593, each for a process for the manufacture of gasoline from petroleum. The Winkler-Koch Engineering Company (hereinafter referred to as Winkler-Koch) manufactures and sells oil cracking stills whose operation, it is charged, infringes the two patents above mentioned. Defendant Globe Oil & Refining Company (hereinafter referred to as Globe) purchased and is operating one of these stills.

On March 11, 1929, plaintiff brought suit in the District Court for the Eastern District of Delaware against Root Refining Company (Winkler-Koch being also made a party defendant though not served with process) for infringement of said patents. Root Refining Company was operating a Winkler-Koch still, the operation being the same as that of Globe in this case, which, it is charged, infringes the two patents. The defenses alleged in that case were the invalidity of the patents and lack of infringement. The District Court found the patents valid and infringed, 6 F.Supp. 763. This decision was affirmed by the Circuit Court of Appeals (Root Refining Co. v. Universal Oil Products Co., 3 Cir., 78 F.2d 991) and petitions for writs of certiorari were denied by the Supreme Court (296 U.S. 626, 56 S.Ct. 149, 80 L.Ed. 445).

Plaintiff contends that the defense of this suit was in charge of and controlled by an association of users of Winkler-Koch stills, a voluntary association known as the Patent Company, of which Root and Globe were members, that the decision of the court in that case bars Globe from raising here the issues decided in that case.

First: Was the defense of the Root case in charge of and controlled by the Patent Company? Before any litigation was instituted by plaintiff it had notified Winkler-Koch and various users of the stills of that company that it considered the use of such stills an infringement of its patents. Apparently, plaintiff, Standard Oil Company and other companies owning patents covering cracking processes were threatening to sue the users of the Winkler-Koch stills.

It appears from a letter (Plaintiff's Ex. 116) from F. L. Jehle, vice-president of Globe Oil & Refining Company of Oklahoma (a corporation closely related to the defendant here, the same persons being respectively president and vice president of both corporations), that a meeting of refiners who had purchased Winkler-Koch stills was held at Wichita, Kansas, on February 25, 1929. This letter was addressed to Mr. I. A. O'Shaughnessy who then was and still is president of both Globe Companies. In this letter it was stated that the object of the meeting was to form an organization which could function properly in case infringement was charged against the users of Winkler-Koch stills by other concerns selling equipment for cracking oil. There were represented at the meeting ten other companies. The plan advanced was that an association be formed to be known as the Winkler and Koch Patent Company, which should be incorporated, all the stock to be owned by Winkler and Koch (the plan of forming a corporation was afterwards abandoned and the Patent Company was simply a voluntary association).

It was planned that a defense fund be raised by contributions from all users of Winkler-Koch stills, the money "to be used to defend any Refiner who is sued by any company claiming infringement".

This letter indicated nothing more than a proposal to raise a defense fund. The method finally adopted for accomplishing this was to assess each producer a royalty upon each barrel of finished cracked gasoline produced. A representative of the Root Company attended this meeting, and that company took an active part in the affairs of the Patent Company (Plaintiff's Ex. 65).

The members of the Patent Company, however, did much more than raise a defense fund. Mr. J. Bernhard Thiess, then a member of the firm of Jones, Addington, Ames & Siebold, had been representing the Sinclair Refining Company and was known to be an outstanding patent attorney and particularly familiar with the processes involved in the production of gasoline. At the meeting held for the organization of the Patent Company, February 25, 1929, Mr. Koch recommended that Mr. Thiess be retained to defend suits that might be brought against the users of Winkler-Koch stills. He wrote to Mr. Thiess and Mr. Thiess replied that he could represent the Winkler-Koch Patent Company in all patent matters in which the interests of the Patent Company were not in conflict with the interests of the Sinclair Refining Company (Plaintiff's Ex. 153).

The retainer was effected and Thiess became the attorney for the Patent Company. Shortly afterwards Hamilton, president of Root, with a Mr. Dowden, the general counsel for the Root Company, met Thiess in Chicago and negotiated with him concerning representation by him in the case of Universal against the Root Company. Following those negotiations Hamilton wrote Thiess (Plaintiff's Ex. 35) advising him he was authorized to appear for the company in the Universal case subject to certain conditions, (a) that his company should not be liable for the payment of any fees or expenses but that Thiess should look to the Winkler-Koch Patent Company for payment; (b) that the Winkler-Koch Company should raise not less than $75,000 as a defense fund "for fighting the patent suits which involve the question as to whether the patents owned by Universal Oil Products Company cover the Winkler-Koch installation"; (c) Root reserved the right to compromise the suit. The impression I get from this letter is that Root considered this case as primarily the case of the Patent Company. Ordinarily one does not attempt to impose the cost of his attorneys in his own case upon another. Nor, if it was Root's case, was it necessary to reserve a right to compromise. A short time later Root mod-

ified the third condition, agreeing that if the suit was compromised no record of such compromise or settlement should be filed or made a part of the proceedings, nor any consent decree entered until after final judgment was rendered in a companion suit of Universal Oil Products Company v. White Eagle Oil and Refining Company, and that Root Company would make every effort to prevent publicity of the settlement which might operate to the disadvantage of other Winkler-Koch users.

On May 24, 1934, Mr. Thiess sent a letter to Mr. Dowden (Plaintiff's Ex. 37) confirming a telephone conversation between them, in which it was stated that the conditions laid down in the letter from Hamilton to Thiess were further modified so as to require the Patent Company to raise substantially $75,000 instead of not less than that amount. Further the provision as to settlement of the case was modified and it was agreed that in case Root settled with Universal the agreement of settlement should contain a provision that "such settlement will in no way be binding upon either the Winkler-Koch Patent Company or any other licensees". It is difficult to understand why this modification was made if it was not felt by the Patent Company and its attorneys that the result of the Root case might be binding upon all the licensees of the Patent Company and they wished to make certain that those licensees would not be bound by any judgment unless it came as a result of a trial on the merits.

It was right and proper that Mr. Thiess should make these conditions clear. Root was agreeing that the Patent Company should conduct the defense of the suit. Mr. Thiess was the attorney for the Patent Company and it was his duty to that Company to secure an agreement from Root that it would not during the course of the litigation change its position (as any client may do without the consent of his attorney) and make a settlement that would injure the Patent Company or its licensees.

Some correspondence had passed between Hamilton as president of Root and the Patent Company concerning the funds of the Patent Company and on December 20, 1929, Hamilton wrote a letter to the Patent Company that the Root Company had agreed to advance $5000 for the patent litigation "upon your assurance that our suit with the Universal Oil Products Company would be fought to conclusion by attorneys employed by the Patent Company * * *".

Later Judge Denison was brought into the case. His employment was arranged for by the Patent Company. Mr. Hamilton was consulted as to the appointment but only as a member of the Executive Committee of the Patent Company. In a letter from Hamilton to the other two members of the Executive Committee dated February 16, 1932, he said he was glad to learn "that Judge Denison has expressed himself as being available for employment by our group" and further "I feel it is highly important that we retain Judge Denison as the trial of our cases appear eminent (sic) and it does not appear possible for us to obtain other expert help".

Experts were also employed and this was by the same Executive Committee. So far as the record shows the Root Company took no active part in the trial or preparation for trial of the case in which it was defendant. The case was controlled by the Patent Company. It is true that Mr. Hamilton when on the stand testified that "the Root Company is conducting this trial, is in charge of this trial, it is conducted by our attorneys," but that was only his conclusion. As shown above Root had required an agreement that Thiess should be paid by the Patent Company, and had advanced money to the Patent Company only on the assurance that the suit would be fought to a conclusion by attorneys employed by the Patent Company.

After the adverse decision by the District Court the question of appeal was raised. Mr. Thiess writing to the president of Globe suggested that a meeting of the licensees of the Patent Company be held within a very short time, and the next day in a letter to the president of the National Refining Company, (a member of the Patent Company) stated that an appeal would be taken and "such other steps as will be necessary to protect the licensees", i. e. the members of the Patent Company. The appeal was taken, and upon affirmance of the decision of the lower court, application was made to the Supreme Court for a writ of certiorari, which was denied. These proceedings were conducted by Thiess and Judge Denison.

From the documentary evidence it clearly appears, or so it seems to me, that the Patent Company conducted the defense for the Root Company and was in control of the case for the defendant. It is true, of

course, that Root might at any time have discharged Mr. Thiess and Judge Denison, might have put counsel of its own choosing and paid by it in charge, and might have taken control of the case from the Patent Company. But it did not.

The evidence shows, in my opinion, and I so find, that the Patent Company was in charge of and controlled the defense of the Root case.

Second: As to the relation of Globe Oil & Refining Company (Illinois) defendant here to the Patent Company:

This company was formed February 27, 1929. The next day Mr. F. L. Jehle, vice-president of Globe Oil & Refining Company organized under the laws of the State of Oklahoma (there were several Globe companies, defendant here being referred to simply as Globe) wrote to I. A. O'Shaughnessy, president of defendant here, the letter heretofore referred to as Plaintiff's Exhibit 116.

On the 21st day of February, 1930, Globe (the defendant here) accepted a license from the Patent Company (Plaintiff's Ex. 80) in which Globe granted to the Patent Company the right (but not obligation) to defend, at the expense of said Patent Company, "any suit or suits for infringement by process or apparatus of the one (1) still" of the Engineering Company installed at Lemont, Illinois.

In 1930 Globe joined the Patent Company and has been paying ever since. Mr. O'Shaughnessy as president of Globe (Oklahoma) had been active in the organization and a member of the Executive Committee since that committee was first formed. When it was suggested that Judge Denison be retained he was consulted and replied in a telegram (Plaintiff's Ex. 43), "I agree with you we should employ Judge Denison".

After the trial of the Root case had commenced Mr. Hamilton became concerned that sufficient funds should be raised to enable a proper defense to be made and wrote to Mr. Pritchard and Mr. O'Shaughnessy urging that letters be written to other members of the Patent Club reminding them that an adverse decision in the Root case would be equally effective against them. Mr. O'Shaughnessy replied, assuring Mr. Hamilton that there would be no difficulty in securing the needed funds and ending the letter in an expression of confidence "in our attorneys and technical experts"

and that "they are doing their utmost to give us the best they have".

While experiments were being conducted in preparation for the trial of the Root case, Mr. Jehle writing to Mr. O'Shaughnessy concerning the experiments said, "all of this information will be given to all who participate in the defense."

In my opinion the evidence shows, and I so find, that Globe participated in the defense of the Root case.

Third: Defendant contends that it is not bound by the Root decree "because, in order that it be bound controlling participation in the Root trial must have been open and avowed and then known to plaintiff".

While Mr. Thiess was making his opening statement in the Root case the following colloquy occurred:

"Mr. Thiess: * * * It is a very expensive proceeding for a defendant to prepare for a defense of this character, and this defendant was put to the expense of preparing a defense on those ten patents; and within the last six months, as Judge Haight has told you, all but one of the six patents in the first suit, were dropped, and all but one of the four patents in the second suit were dropped. Now, we have heard about all the licensees of this Universal Oil Products Company.

"The filing of these suits against the present defendant was—

"The Court: Starting with ten, was that very oppressive as things go?

"Mr. Thiess: It is exceedingly oppressive. * * *

"Now, that is a form of litigation for commercial warfare. A small refiner who is threatened by a powerful patent holding company, is told that if he does not take a license he will suffer the penalty, is intimidated and coerced into taking a license, because he has not the financial ability to stand that sort of expense.

"The Court: Fortunately that does not happen here, I take it?

"Mr. Thiess: What happened here is, several defendants have combined so that they can stand this. There are other suits pending here, and they have contributed merely to this defense.

"Mr. Haight: * * * Mr. Thiess has told you that there were others contributing to the defense of this suit. That fact having been spread upon the record, it is

proper that he should be required, I think, to tell us who they are, in order that if this suit is decided in our favor, or in their favor for that matter, the suit may be res adjudicata, and further litigation as against these particular parties, brought to an end; and I move that he be required to spread upon the record the names of the persons or concerns who are contributing to the defense of this suit.

"Mr. Thiess: If your Honor please, I do not think that this is at all necessary nor is it incumbent upon me to make that sort of a statement. The mere fact that a party contributes to a suit does not bind that party to the suit unless that party exercised control, and there is no such thing here.

"Mr. Haight: I think that is a fair statement of the law, but I think that the next question I would put to Mr. Thiess would indicate that the parties have control, because I think that he represents the same parties.

"Mr. Thiess: And I am not here for cross-examination and I do not think that it is necessary for me to make any statement of that kind.

"The Court: The employment of distinguished counsel does not identify him with all his clients in a particular litigation.

"Mr. Haight: He has filed answers for all of the Winkler-Koch Defendants. I think that those facts together should entitle us to know whether or not these people have clubbed together and employed Mr. Thiess, and if so, whether they have in that sense the direction of this suit and contributing to the expense of maintenance of it to such an extent as to make the suit res adjudicata against them. * * *

"The Court: Your motion is based solely upon the voluntary statement of Mr. Thiess?

"Mr. Morris: Yes.

"The Court: That there are others contributing.

"Mr. Morris: Yes.

"The Court: And his further statement that they do not control or direct his case. Equal credit attaches to all these statements. As at present advised, your motion is denied."

This is the only evidence in the case on the question of whether Globe's participation was open and avowed. I find that such participation was not open and avowed.

Was the participation of Globe then known to plaintiff? Plaintiff no doubt suspected that Globe was participating in the defense. It knew, in a general way, of the activities of the Patent Company. Mr. Thiess was defending each of the suits that Universal had instituted. It was admitted that Globe and other operators of Winkler-Koch stills were contributing to a defense fund. But the evidence shows, and I so find, that plaintiff did not then have *knowledge* that Globe was participating. It has that knowledge now. The fact was developed on the trial of this case.

■ Fourth: Is it essential that, to bind a party by a judgment in another suit in which he has actively participated and which he, either alone or with others has conducted and controlled, such participation be open and avowed or known to the other party?

Counsel for defendant cite many cases in which the court has held that the participation must be open and avowed. The situation, however, in those cases was not similar to that in the case at bar. Bigelow v. Old Dominion Copper Co., 225 U. S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann. Cas.1913E, 875, is one of the cases principally relied upon by defendant. Suits were brought against Bigelow in Massachusetts by the Copper Company to recover certain secret profits obtained by Bigelow and one Lewisohn as organizers and promoters of the Copper Company in selling the properties of another corporation called the Baltimore Company and certain neighboring properties. There were two sales and separate suits were brought. It was charged in each case that at the time the sales were made the Copper Company was under the absolute control of Bigelow and Lewisohn and that they divided the profits between them. A decree was rendered for the plaintiff for something over two million dollars. This decree was affirmed by the Supreme Judicial Court of Massachusetts. Bigelow sued out a writ of error from the United States Supreme Court.

The Federal question presented was whether the Massachusetts courts had given full faith and credit to a New York judgment pleaded as a bar to these suits. The Copper Company had filed in the Circuit Court of the United States for the Southern District of New York a

separate suit against Lewisohn who was a resident of that state, Bigelow being a resident of Massachusetts. The bills in the Bigelow and the Lewisohn cases were identical in every essential. A demurrer to the bill was sustained by the District Court in the New York case. The judgment of the District Court was affirmed by the Circuit Court. One of the New York cases was taken to the Supreme Court of the United States and affirmed. Bigelow did not participate in the New York case, but it was contended that the judgments in the New York cases barred plaintiff's action against Bigelow. These facts must be borne in mind when considering the statement by Justice Lurton in his opinion (225 U.S. 131, 32 S.Ct. page 644, 56 L.Ed. 1009, Ann.Cas.1913E, 875) "there can be no estoppel arising out of a judgment, unless the same parties have had their day in court touching the matter litigated, and unless the judgment is equally available to both parties. It requires no discussion to demonstrate that a judgment in the Lewisohn suit would not have fixed liability upon the present defendant. Hence there can be no estoppel under our law or under the general principles of jurisprudence, because it is not mutual."

There are other considerations involved than simply the interests of the parties. The public has an interest. Justice Miller speaking for the court in Miles v. Caldwell, 2 Wall. 35, 39, 69 U.S. 35, 17 L.Ed. 755, said: "It is a general rule * * * founded also upon the principle that it is the interest of the public, that there should be some end to litigation, that when a matter has once been heard and determined in one court, it shall not be subject to reexamination in another court between the same parties."

Again in Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 48, 49, 18 S. Ct. 18, 27, 42 L.Ed. 355, the court said: "The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them."

The author of the article on Judgments, 34 Corpus Juris, 743, states the reason for the rule thus: "Res judicata is a rule of universal law pervading every well regulated system of jurisprudence, and is put upon two grounds, embodied in various maxims of the common law; the one, public policy and necessity, which makes it to the interest of the state that there should be an end to litigation—interest republicae ut sit finis litium; the other, the hardship on the individual that he should be vexed twice for the same cause—nemo debet bis vexai pro eadem causa."

Every citizen, party to a dispute with which the law concerns itself, is entitled to his day in court. He should be given the opportunity to present his case fully and have a judgment on the merits, but no more. Has not the defendant had that opportunity? The same counsel represented all of the members of the Patent Company. They are all operating the same kind of stills. They had an opportunity in the Root case to present every defense of which they might avail themselves in any suit by Universal. The experts employed to carry on experiments which might tend to furnish evidence to support the defense were the experts of Globe as well as Root and all the other members of the Patent Company. There were many users of the Winkler-Koch stills. Each case apparently will require weeks for trial. Must the time of the courts be given to this litigation when there has once been a full and fair trial upon the merits, a trial in which all of the members of the Patent Company have participated? I think not.

I can see no reason why a party who has conducted and controlled litigation should not be bound by the result even though he has successfully concealed the fact of his participation. Globe and the other members of the Patent Company

were engaged, in the Root case, in litigation to determine the validity of the patents owned by Universal. The government had furnished a forum for the determination of that question. It was determined. There can be no reason for the government again to furnish a forum for the same purpose, whether or not Universal knew of the participation of the members of the Patent Company. Many Winkler-Koch stills have been installed and are being operated. Many suits have been instituted by Root against members of the Patent Company. Maintenance of peace and good order, the purpose for which the Government establishes and maintains the judicial system, does not require permission to each member of the Patent Company to have its case separately litigated when each is participating in and conducting the suit of each of the others.

In my opinion good faith requires parties participating in and controlling a case, but who are not parties of record, to disclose to the court the fact of such participation, and failing to do so, such parties are not in position to avoid the effect of the judgment as a bar on the ground that there is lack of mutuality of estoppel, if the opposing party subsequently learns of their participation.

Fifth: Defendants complain that plaintiff has been guilty of such laches in setting up the former adjudication as a bar to this proceeding. Without here reviewing the facts in detail, it is my opinion, and I so find, that the evidence does not show laches.

Sixth: In the Root case a decree was entered finding Universal's patents valid and infringed. An appeal was taken to the Circuit Court of Appeals for the Third Circuit and the decree of the District Court was affirmed. Certiorari was denied by the Supreme Court. The case is now pending in the District Court on an accounting. Defendant contends that the decree in the former case is not a final decree that may be set up as a bar in a subsequent case. The Circuit Court of Appeals of this Circuit has held. to the contrary. Larkin Automotive Parts Co. v. Bassick Mfg. Co., 19 F.2d 944; Sewerage Commission v. Activated Sludge, 81 F.2d 22. The Circuit Court of Appeals of the Ninth Circuit is of the same opinion. Carson Inv. Co. v. Anaconda Copper Mining Company, 26 F.2d 651.

In my opinion the decree in the case of Universal Oil Products Company v. Root Refining Company is conclusive against the Globe Oil and Refining Company on the issues of the validity, and infringement of the Dubbs and Egloff patents.