Skelly Oil Company et al., Appellants, v. Universal
Oil Products Company, Appellee.

Gen. No. 44,627.

NIEMEYER, J., dissenting in part.

Opinion filed June 20, 1949. Re-hearing denied July 1, 1949. Released for publication July 18, 1949.

THIESS, OLSON & MECKLENBURGER, of Chicago, for appellants; J. BERNHARD THIESS, THORLEY VON HOLST, ALBERT F. MECKLENBURGER, SIDNEY NEUMAN and ROBERT W. POORE, all of Chicago, of counsel.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for appellee; FLOYD E. THOMPSON, of Chicago, of counsel.

MR. PRESIDING JUSTICE FEINBERG delivered the opinion of the court.

This appeal is from an order and judgment dismissing the amended complaint, charging fraud, based on the bribery by defendant of a judge of the United States Circuit Court of Appeals for the Third Circuit in a patent infringement suit (*Root Refining Co. v. Universal Oil Products Co.*, 78 F. 2d 991). The theory of the court below was that the amended complaint failed to state a cause of action.

Plaintiffs were sued in separate suits by defendant for the same alleged infringement of the patent involved in the *Root* case, to which they were not parties. Universal alleged in each of said latter suits that the judgment in the *Root* case was *res adjudicata* as to them. All of the plaintiffs were users of the Winkler-Koch process of cracking and refining petroleum, held in the *Root* case to be an infringement of the patents owned by Universal. Shortly after the institution of the suit against Root, plaintiffs contributed to a fund to be used to defray the expense of defending patent infringement suits brought by Universal against users of the process, claimed by Universal to be a violation of the patents owned by them. There was expended from this fund the expenses attendant upon the defense of the infringement suits against plaintiffs, Root and the National Refining Company, another user of the process. It was alleged in the complaint that Universal knew of this fund and the use intended to be made of it in the defense of said suits.

The infringement suits against plaintiffs were instituted between April 11, 1930, and August 23, 1934. The *Root* case was tried before any of the suits against plaintiffs or the National Refining Company. The *Root* case was decided in favor of Universal (6 F. Supp. 763), and upon appeal was argued before the Circuit Court of Appeals for the Third Circuit on January 7, 1935. On April 1, 1935, the suit against National Refining Company was commenced. June 26, 1935, the Circuit Court of Appeals affirmed the judgment in the *Root* case (78 F. 2d 991), and on October 21, 1935, a petition for *certiorari* was denied by the Supreme Court (296 U. S. 626). Accounting proceedings followed against the Root and National companies, and on January 24, 1939, Root settled Universal's claim for profits and damages. Shortly before that the National company settled its case. The suit against Globe, one of the plaintiffs, was decided in favor of Universal (27 F. Supp. 161) by the District Court for the Northern District of Illinois, which held that the judgment in the *Root* case was *res adjudicata*. Subsequently, on July 18, 1939, upon a petition for rehearing before the District Court, the original judgment in the *Globe* case was vacated (31 F. Supp. 665). The hearing upon the merits in the *Globe* case was had July 24, 1941 (40 F. Supp. 575), in which the District Court held the patents invalid and decided adversely on the issue of *res adjudicata*. The judgment in the *Globe* case was affirmed by the Circuit Court of Appeals for the Seventh Circuit June 30, 1943 (137 F. 2d 3) and affirmed by the Supreme Court of the United States May 29, 1944. The dates of these decisions are important, as shall presently be pointed out, in relation to the public exposure of the bribery of Judge DAVIS in the *Root* case.

The amended complaint seeks to recover not only the moneys contributed by them in the defense of the *Root* and *National* cases, but the necessary outlay and ex-

pense of defending each of the cases against them brought by Universal. It alleged that Universal in pleading the judgment in the *Root* case impliedly represented that the judgment was valid and not a corrupt judgment obtained by fraud and bribery. It alleged in detail the facts of the bribery of Judge DAVIS, who wrote the opinion in the *Root* case. The details of the bribery were enumerated in the subsequent opinion of the Circuit Court of Appeals for the Third Circuit, in which it vacated its former judgment and directed the dismissal of Universal's suit against Root (169 F. 2d 514). It alleged that each of the plaintiffs was compelled to expend a large sum of money in defending its suit against the claim of *res adjudicata,* alleged by Universal, when it knew at the time it made its claim of *res adjudicata* that the *Root* judgment was obtained by Universal by fraud and corruption through the bribery of Judge DAVIS.

In the view we take of this appeal, we shall discuss only that part of the amended complaint which seeks to recover the necessary expense and damages incurred by each of the plaintiffs in the defense of each of their suits brought against them by Universal.

It is the theory of the plaintiffs that they are entitled to recover, as indicated, because of the fraud and corruption of Universal.

Tersely stated, the theory of the defendant is that the present action is for fraud and deceit, and that in such an action it is necessary to allege that the plaintiffs relied upon the implied representation that the judgment obtained by Universal, against Root, was a valid judgment; that these plaintiffs resisted the claim of *res adjudicata* and, therefore, did not rely upon the implied representation, which defeats their right to recover; that it is against public policy to permit a defendant to recover money necessarily expended in defense of a patent infringement suit, except taxable costs.

The shocking type of fraud involved in the instant case should not be compared with the ordinary case of fraud and deceit, or where perjury is deliberately employed by a successful litigant in the trial of a case. The latter type of fraud is not uncommon, but the bribery of a Federal Court of Appeals judge to secure a corrupt judgment, and the use of the corrupt judgment by the briber as a basis for similar litigation against others, is quite a different type of fraud from that discussed in the cases relied upon by defendant. The claim here presented, arising out of the bribery of the judge, may be *sui generis*. At least no like reported case has been cited.

The designation of the action is of no moment. If the facts, as set up in the instant complaint, disclose the unprecedented type of fraud we are dealing with, then the situation demands a remedy. The framers of the State Constitution of 1870, Article II, §19, wisely inserted this provision:

"Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; he ought to obtain, by law, right and justice freely, and without being obliged to purchase it, completely and without denial, promptly, and without delay."

This is a clear mandate to the courts, that wherever the legislature has failed to provide a remedy, the courts must. This constitutional protection should be here invoked, especially where the legislature has not provided a remedy. Courts should not be helpless to find a remedy for a fraud of the instant type. If the statute fails to provide a remedy, the court can, as it has in many instances under the common law and equitable principles. In the cases of fraud and deceit the remedy is generally provided for by the courts, not by statute. It is perfectly clear that the Constitution had not in mind only remedies created

by legislative enactment. The right of these plaintiffs to use the process alleged to be an infringement was a property right, and was not an infringement upon any right or patent Universal claimed, as was ultimately adjudicated. In the pursuit of their property right to use the process, plaintiffs should not have been burdened with the expense of defending against a claim of infringement based upon the corrupt judgment of the Court of Appeals. This money expended was a property loss. The constitutional provision should be applied to this wrong to property. That this corrupt judgment had its effect at the outset upon the District Court in Illinois is borne out by the first opinion in the *Globe* case (27 F. Supp. 161).

Judge DAVIS and his co-conspirator were indicted for conspiracy to obstruct justice, and bribery. They were tried upon this indictment between May 19 and May 29, 1941, resulting in a disagreement of the jury. A second trial upon the same indictment was had between July 28 and August 21, 1941, also resulting in a disagreement. It was upon the trial of this indictment that the evidence revealed the alleged bribery and conspiracy to obstruct justice (169 F. 2d 514). A petition in the *Root* case was presented June 5, 1941, to the United States Court of Appeals for the Third Circuit to vacate its previous judgment, and was heard by three justices designated by the Chief Justice of the United States Supreme Court (169 F. 2d 514). The petition informed the court of the corrupt and illicit conspiracy of Judge DAVIS and his accomplice, not only in the *Root* case but also in another case in that court (*American Safety Table Co. v. Singer Sewing Machine Co.*, 95 F. 2d 543). Immediately it is apparent that the charge of corruption against Judge DAVIS was not limited to the *Root* case, but included other cases before his court. November 26, 1941, a master was appointed to hear the evidence, and on October 19, 1943, reported his conclusions of fact, clearly convicting

Judge DAVIS and his accomplice of the conspiracy charged and the bribery involved. Thus the fraudulent judgment obtained from Judge DAVIS in the *Root* case came to public light before the hearing of the merits of the *Globe* case in the District Court of Illinois before Judge HOLLY, and before the subsequent affirmance by the Federal Court of Appeals, Seventh Circuit. While no reference is made either in the opinion by Judge HOLLY in the *Globe* case or that of the United States Court of Appeals, Seventh Circuit, to the public exposure of the conduct and judgment of Judge DAVIS in the *Root* case, it is fair to presume that it came to their attention. It is not surprising that they refused to accept the judgment in the *Root* case as *res adjudicata* or judicial precedent in the *Globe* case.

There is a striking analogy in the relief allowed by the Supreme Court of the United States in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U. S. 238, and *Shawkee Mfg. Co. v. Hartford-Empire Co.*, id. 271. In the *Hazel* case a suit for infringement of patent was brought by the Hartford company, and it appears that in the hearing upon the application for a patent in the patent office the Hartford company experienced considerable opposition and difficulty. To help its position with the commissioner of patents the Hartford company was responsible for the preparation and publication in a trade journal of a spurious article by William Clarke, extolling the benefits of the patent applied for. Upon the strength of the authorship of that article the Hartford company succeeded in securing the patent. The article was made a part of the record and files of the patent office in connection with the issuance of the patent. In the subsequent infringement suit against the Hazel company, the article in question was used and submitted to the court for consideration. The District Court dismissed the complaint, holding there was no infringement (39 F. 2d 111). Upon appeal by the Hartford company, the Circuit Court of Appeals

reversed the District Court and held the patent valid and infringed (59 F. 2d 399). The Hazel company settled and paid $1,000,000 to the Hartford company, and procured licensing agreements from the Hartford company. Nearly nine years later proof of the use of the spurious article before the commissioner of patents was fully brought to light, in 1941, in the trial of an anti-trust prosecution (*United States v. Hartford-Empire Co.*, 46 F. Supp. 541). Upon the basis of this disclosure the Hazel company presented its petition to the Court of Appeals to review its former decision and to vacate it on account of the fraud perpetrated upon the court. The Court of Appeals refused to interfere and the Supreme Court, speaking through Mr. Justice BLACK, in reversing the Court of Appeals and directing that it exercise its authority to vacate its own judgment for such fraud, said at page 245:

"Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. *This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. . . .* we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals." (Italics ours.)

At page 246 the court said:

"But even if Hazel did not exercise the highest degree of diligence, Hartford's fraud cannot be condoned for that reason alone. This matter does not concern only private parties. There are issues of great moment to the public in a patent suit. . . . Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot com-

placently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.''

The court, in speaking of the influence of the spurious article and its effect upon the Court of Appeals, said at page 246:

''Whether or not it was the primary basis for that ruling, the article did impress the Court, as shown by the Court's opinion. Doubtless it is wholly impossible accurately to appraise the influence that the article exerted on the judges. But we do not think the circumstances call for such an attempted appraisal. Hartford's officials and lawyers thought the article material. They conceived it in an effort to persuade a hostile Patent Office to grant their patent application, and went to considerable trouble and expense to get it published. . . . they urged the article upon the Circuit Court and prevailed. They are in no position now to dispute its effectiveness.''

Following the decision of the Supreme Court of the United States in the *Hazel* and *Shawkee* cases, *supra,* the Shawkee company and Hazel company filed counterclaims in the District Court against the Hartford company, seeking to recover back from the Hartford company (a) the royalty fees paid under the contracts to the Hartford company, (b) *the litigation and traveling expenses and disbursements in connection therewith,* and (c) *exemplary damages.* The District Court allowed restitution of the amounts paid by defendants to Hartford and denied the other claims (67 F. Supp. 26). Upon appeal, the United States Court of Appeals reversed the District Court (163 F. 2d 474) and at page 479 said:

"The Court below refused to allow counterclaimants *legal and traveling expenses and incidental disbursements* because of the conclusion that Hartford's original suit was not a malicious prosecution. Hartford defends that decision by referring to cases which hold such expenses unrecoverable . . . . *Neither ground recognizes the claim for what it really is, namely, damages sustained through Hartford's fraud and hence enforceable against the latter.*" (Italics ours.)

At page 480 the court said:

"The remaining claim submitted on this appeal is for punitive damages. This was denied by the District Judge solely because he considered that Hartford's action did not partake of the elements of malicious prosecution. . . .

"The seriousness, the long duration and the aggravated character of the fraud which has necessitated this litigation is set forth in the cited opinions of the Supreme Court. In those circumstances, the trial court has power to inflict such damages, 'having in view the enormity of . . . [the] offense rather than the measure of compensation.' . . . The federal cases on this subject require, of course, that fraud and deceit be shown on the part of the litigant subject to the damages. . . . But wilfulness, 'evil intent' and 'wrong motive' . . . were necessarily present in this miserable fraud of which Hartford has been found guilty.

"This case calls for such damages although it is for the District Court, as the trier of fact, to assess them, taking into consideration the whole wretched scheme as ascertained and etched in unmistakable terms by the Supreme Court."

We regard the fraud alleged in the instant case of greater enormity than the type of fraud involved in

the *Hazel* and *Shawkee* cases. There the fraud was upon the court, for which both the Supreme Court of the United States and the Federal Court of Appeals say there is a remedy. It is more imperative that there be a remedy for the pernicious fraud engaged in by Universal, and used in the cases against these plaintiffs, which necessarily put them to the expense of defending. It is fair to assume that if the Court of Appeals in the *Root* case were presided over by a justice other than Judge DAVIS, and free from the grip of the slimy hand of the briber, it would have decided in the *Root* case the patents were invalid, as did the District Court and Court of Appeals in the *Globe* case. Had this been the result in the first instance in the Court of Appeals in the *Root* case, there undoubtedly would have been no need for defending in the *Globe* case and the other cases against these plaintiffs.

We think there is no merit in defendant's contention that because each of the plaintiffs resisted the claim of *res adjudicata,* therefore there is lacking the legal requisite in fraud and deceit that plaintiffs relied upon the implied representation that the judgment was a valid one. These plaintiffs, by resisting the claim of *res adjudicata,* did not necessarily admit that they did not rely upon the alleged implied representation that the judgment was an honest and valid one, free from fraud and corruption. There is nothing in the complaint to indicate that at the time they resisted the claim of *res adjudicata* they were aware of the bribery and corruption of Judge DAVIS. They could consistently resist the claim of *res adjudicata* upon the theory that the merits with respect to the claim of infringement should convince the court that Universal's patents were not valid and, therefore, no infringement. Such resistance to the judgment would be merely to its persuasiveness and not to the alleged implied representation that the judgment was an honest one instead of corrupt.

■■ Defendant relies upon *Ritter v. Ritter*, 381 Ill. 549; *Smith v. Michigan Buggy Co.*, 175 Ill. 619, and kindred cases, to oppose the claim for recovery of necessary expense and outlay, including attorneys' fees, in defense of the actions against plaintiffs brought by defendant. The theory urged is that such claim would be against public policy. The *Ritter* case does recognize that if the action permits an award of exemplary damages, the expenses and attorneys' fees may be considered in estimating the amount of damages, but such attorneys' fees are not allowed in addition to the sum assessed as exemplary damages. The *Ritter* case did not involve the type of fraud in the instant case. Clearly, the Supreme Court in the *Ritter* case determined that the cause of action did not permit a recovery of exemplary damages and, therefore, expenses and attorneys' fees could not be claimed. When we consider the type of fraud in the instant case and determine that punitive damages are a proper measure of damages to be considered, then the *Ritter* case and like cases cited by defendant are not applicable. We believe the applicable rule was announced by our Supreme Court in *Eshelman v. Rawalt*, 298 Ill. 192, at page 196:

"Punitive, vindictive or exemplary damages are allowed in this State where a wrongful act is characterized by circumstances of aggravation, such as willfulness, wantonness, malice or oppression, but to warrant an allowance of such damages the act complained of must not only be unlawful but must partake of a wanton and malicious nature. While the doctrine allowing such damages has been criticised and in some States has been repudiated, it was said in *Holmes v. Holmes*, 64 Ill. 294, that the doctrine is too firmly rooted in our jurisprudence to be disturbed."

In *Laughlin v. Hopkinson*, 292 Ill. 80, which was an action for fraud and deceit, the court, speaking through Mr. Justice THOMPSON, said:

"In ordinary cases a recovery of exemplary damages will not be allowed in an action of deceit, but such damages may be allowed where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly showing malice and willfulness and calling for the extension of the doctrine. . . . Where damages result from willful, wanton and grossly fraudulent representations, we think it proper that the jury should be permitted to inflict damages for example's sake and by way of punishment to the defendant."

*Spaids v. Barrett,* 57 Ill. 289, was an action for damages growing out of the malicious suing out of an attachment writ, and perishable property threatened to be seized upon the writ, and to avoid the seizure defendant paid the amount of the claim demanded. The complaint alleged that the money was extorted through the malicious abuse of civil process. The complaint was dismissed by the trial court for failure to state a cause of action. The contention raised was that the remedy was limited to the bond given in the attachment suit, if there was any damage suffered, and that there could be no suit for malicious prosecution since the writ was not levied and the suit was dismissed. The Supreme Court said at page 295:

"The averments in the declaration, and proofs offered, if they can be made, show a most iniquitous abuse of legal process to extort money; *and courts of justice had better be abolished if they can afford no redress for such oppression.* The court therefore erred in the rejection of the evidence offered. For the errors indicated the judgment is reversed, and the cause remanded." (Italics ours.)

The motion of the defendant in the instant case was, in the alternative, to dismiss the amended com-

plaint or to make more certain and to strike parts of the amended complaint, for the reasons specifically set forth in said motion. The alternative motion should have been allowed, but not that part of the motion to dismiss the action. Under the present Practice Act (§ 42 (2)) [Ill. Rev. Stat. 1947, ch. 110, par. 166, subpar. (2); Jones Ill. Stats. Ann. 104.042, subpar. (2)] plaintiff is only required to plead such matters as shall reasonably inform the opposite party of the nature of the claim. *Central States Warehouse v. Watson Bros.*, 336 Ill. App. 314.

These plaintiffs cannot recover for the contribution made by each of them to the defense of the *Root* or *National* cases, to which they were not parties. Their complaint should be limited to a recovery for money necessarily expended in defense of their own actions, the amount of which would depend upon the proof. The complaint under the facts alleged, if proven, could claim punitive damages, as was allowed by the United States Court of Appeals in the *Shawkee* case (163 F. 2d 474), and *Eshelman v. Rawalt, Laughlin v. Hopkinson,* and *Spaids v. Barrett, supra.*

In the final analysis, the record poses the following questions, the correct answers to which are of grave and far reaching importance:

Is this court to say to plaintiffs, who are the innocent victims of this fraud, and who were compelled to expend substantial amounts in their own suits in defense against the fraud, "There is no remedy for you"?

Should this court refuse to search out for a remedy for these plaintiffs, and thus permit this defendant, admittedly responsible for the pollution of the temple of justice, to advance highly technical barriers to a recovery simply because this situation may be *sui generis?*

The opinion of Justice BLACK in the *Hazel* case, *supra,* and the holding by the United States Court of Appeals in the *Shawkee* case, 163 F. 2d 474, are a clear

answer to these questions. The answer to each of these questions should be emphatically "No."

The judgment of the Circuit Court dismissing the odd-numbered counts of the amended complaint should be affirmed, and reversed as to the even-numbered counts, with directions to allow the plaintiffs to file an amended complaint, if they so desire, to conform to the views expressed herein.

*Reversed and remanded with directions.*

TUOHY, J., concurs.

NIEMEYER, J., dissenting in part: The odd-numbered counts are based on fraud in obtaining a judgment by bribery of a judge. The even-numbered counts are based on a more familiar type of fraud—the procurement of a judgment or the attempt to procure a judgment by perjured testimony, forged instruments, spurious documents or other fraudulent devices designed to influence and mislead the court. The character of the fraud is not changed nor the liability of the defendant enlarged because, as in the instant case, the defendant sought to procure a judgment by urging as *res judicata* or as a judicial precedent a judgment in another case obtained by bribery of a judge. Plaintiffs and defendant treat the case as an action for fraud and deceit. The essential elements of that action are stated in *Bouxsein v. First Nat. Bank of Granville*, 292 Ill. 500, 502, as follows:

"The elements of a cause of action of this character are representation, falsity, *scienter,* deception and injury. (*Foster v. Oberreich*, 230 Ill. 525.) The bill must show on its face, first, that the defendant has made a representation in regard to a material fact; second, that such representation is false; third, that such representation was not actually believed by defendant, on reasonable grounds, to be true; fourth, that it was made with intent that it should be acted on; fifth, that

it was acted on by complainant to his damage; and sixth, that in so acting on it the complainant was ignorant of its falsity and reasonably believed it to be true.''

The merits of this appeal must be tested by the allegations of the amended complaint and not by extraneous matters. The even-numbered counts allege that the actions of the defendant in pleading the *Root* judgment as a judicial precedent and *res judicata* in its suits against the respective plaintiffs and in relying upon the judgment as a judicial precedent in its efforts to have the adverse judgment in the *Globe* case reversed, were false and fraudulent representations to the effect that the *Root* judgment was ''valid and untainted with fraud,'' made to plaintiffs by defendant, knowing that the representations were false and intending that they be relied and acted upon by plaintiffs; that such representations were relied and acted upon by plaintiffs to their damage. Whether the *Root* judgment was *res judicata* or a judicial precedent, as defendant contended, was a question to be determined by the courts in which the suits were pending. The implied representations as to the validity of the judgment arising from the acts of defendant in urging it as *res judicata* or as a judicial precedent, were made to the courts and not the plaintiffs. Thus, in the cases of *Hazel-Atlas Co. v. Hartford Co.,* 322 U. S. 238, and *Shawkee Mfg. Co. v. Hartford Co.,* id., 271, cited in the majority opinion, the fraud of Hartford in the use of the spurious article signed by William Clarke is always referred to as a fraud on the patent office and the court of appeals, and not as a fraud on the defendants in the patent infringement suits brought by Hartford. Furthermore, the validity of the *Root* judgment could not become a relevant or material issue in the suits brought by defendant unless its contention that the judgment was *res judicata* or a judicial precedent was upheld by the courts. Plaintiffs at all times denied,

and on this appeal deny defendant's claims as to the *Root* judgment. There is no allegation that any plaintiff or court was misled by defendant's implied representations as to the validity of the *Root* judgment or its claims that the judgment was *res judicata* or a judicial precedent and acted upon such representations and claims, either before or after the bribery of Judge DAVIS in the *Root* cases was exposed. The even-numbered counts therefore fail to meet the requirements stated in *Bouxsein v. First Nat. Bank of Granville, supra.* As said in *Wuellner v. Illinois Bell Tel. Co.,* 390 Ill. 126, "There is nothing in any provision of the Civil Practice Act, however, which excuses the necessity of stating a cause of action."

Plaintiffs further contend that an action will lie for damages proximately resulting from fraudulent litigation. In support of this claim they cite the case of *Hartford-Empire Co. v. Shawkee Mfg. Co.,* 163 F. 2d 474. Hartford had procured a decree in a patent infringement case against Shawkee by the fraudulent use of an article purportedly written by an independent expert or technologist but in fact prepared by Hartford and signed by the purported author for a fee. On discovery of the fraud, about nine years later, the Supreme Court of the United States, in the *Hartford* cases heretofore cited, directed the court of appeals to vacate its prior judgment, recall the mandate issued to the district court, dismiss Hartford's appeal, and issue a mandate to the district court directing it to set aside its judgment entered pursuant to the former mandate and reinstate its prior judgment denying relief to Hartford, and to take such additional action as may be necessary and proper. On reinstatement of the judgment of the district court Shawkee filed a counterclaim in that court to recover, in addition to the damages directly flowing from the judgment entered on mandate from the circuit court of appeals, attorneys' fees, traveling expenses, etc., incurred in

the original patent infringement case. The district court denied relief in respect to the attorneys' fees, etc. The court of appeals reversed this holding and said:

"The Court below refused to allow counterclaimants legal and traveling expenses and incidental disburse-' ments because of the conclusion that Hartford's original suit was not a malicious prosecution. Hartford defends that decision by referring to cases which hold such expenses unrecoverable under an injunction bond. Neither ground recognizes the claim for what it really is, namely, damages sustained through Hartford's fraud and hence enforceable against the latter. *Catts v. Phalen, supra; Kraemer v. Graf,* 10 Cir., 105 F. 2d 117, 122; *Smith v. Bellows,* 77 Pa. 441."

The cases cited in support of this rule state the general rule in fraud cases and are of little weight in determination of the question presented to us of the allowance of attorneys' fees as damages resulting from fraudulent litigation. The Illinois authorities do not support plaintiffs' contention. In *Smith v. Michigan Buggy Co.,* 175 Ill. 619, the court denied the right to recover the damages sustained in defending a civil action brought without probable cause to recover damages for fraudulent representations alleged to have been made by Smith in order to secure employment by the Buggy company. In *Ritter v. Ritter,* 381 Ill. 549, the plaintiffs, successful in a former action against defendant, brought a suit to recover attorneys' fees expended in the prior litigation on the ground that the wrongful conduct of the defendant caused plaintiff to institute the prior suit to secure the return of property wrongfully held by defendant. In denying relief the court said (p. 555):

"Under our jurisprudence the defendant may present any defense to such an action that he may have or that he may deem expedient, and in so doing he will

not be subjecting himself to a second suit by the plaintiff based on the wrongful conduct of the defendant in causing the plaintiff to sue him or in defending the action. The rule is the same even though the wrongful conduct of the defendant is willful, intentional, malicious or fraudulent. *Lovell v. House of Good Shepherd,* 14 Wash. 211, 44 Pac. 253; *Henry v. Davis,* 123 Mass. 345; *Textile Leather Corp. v. American Mutual Liability Co.,* 166 Atl. (N. J.) 214; *Perlus v. Silver,* 71 Wash. 338, 128 Pac. 661.''

The decisions in these cases were based on the ground of public policy. The rule announced in the *Ritter* case is equally applicable to actions brought by a successful defendant against an unsuccessful plaintiff. In *Hocker v. Welti,* 239 Ill. App. 392, 396–398, and *Dean v. Kirkland,* 301 Ill. App. 495, 505–508, the courts held that an action would not lie against an opponent for perjury or subornation or attempted subornation of perjury in a civil action. In *Ruehl Bros. Brewing Co. v. Atlas Brewing Co.,* 187 Ill. App. 392, 398, the court said:

''By the weight of the authorities it is well established that no action can be maintained on account of the false testimony of witnesses, or of a false statement filed in a judicial proceeding. It is recognized by the authorities that there may be individual cases in which great injustice may be done by this rule of law. The weight of such an argument, however, is overcome in the opinion of the courts asserting the rule, by the mischief of retrying every case in which the judgment or decree rendered or secured on false testimony, or false affidavits, or on contracts or documents whose genuineness or validity was in issue and which may afterwards be ascertained to be forged or fraudulent. *Young v. Leach,* 27 App. Div. (N. Y.) 293; *Pico v. Cohn,* 91 Cal. 129; *Dunlap v. Glidden,* 31 Me. 435; *Stevens v. Rowe,* 59 N. H. 578; *Grove v. Brandenburg,*

7 Blackf. (Ind.) 234; *Abbott v. Bahr,* 3 Pinney (Wis.) 193; *Schaub v. O'Ferrall,* 116 Md. 131.''

I concur in the affirmance of the judgment of the trial court in dismissing the odd-numbered counts. The action of the trial court in dismissing the even-numbered counts should be affirmed.