**MARYVILLE ACADEMY, et al., Plaintiffs,**

v.

**LOEB RHOADES & CO., INC., et al., Defendants,**

**and Cases Coordinated for Discovery.**

Nos. 77 C 1206, 77 C 1629, 77 C 2440, 77 C 2536, 77 C 2860, 77 C 3820, 77 C 4314, 78 C 388, 78 C 705, 78 C 843, 78 C 850, 78 C 896, 78 C 947, 78 C 994 and 78 C 2242.

United States District Court,
N. D. Illinois, E. D.

Dec. 29, 1981.

1062

Don H. Reuben, Reuben & Proctor, Lowell B. Komie, Howard R. Koven, Friedman & Koven, Chadwell, Kayser, Ruggles, McGee & Hastings, Baker & McKenzie, Sachnoff, Schrager, Jones & Weaver Ltd.,

Chicago, Ill., Reavis & McGrath, New York City, for defendants.

John J. Enright, Arvey, Hodes, Costello & Burnman, Paul B. Uhlenhop, Lawrence, Lawrence, Kamin & Saunders, James P. Chapman, Chapman & Royce, Harry F. Polos, Phelan, Pope & John, Levinson, Komie & Murray, Lowell B. Komie, Chicago, Ill., Hale & Dorr, Boston, Mass., Richard A. Seltzer, Fortes, Eiger, Skirnich & Ginsburg, Foran, Wiss & Schultz, Roan & Grossman, Robert S. Levin, Edward T. Joyce Ltd., Chicago, Ill., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

### GETZENDANNER, District Judge.

This matter had its genesis in a precipitous drop in the price of several securities in the spring of 1977. In sixteen separate cases, which have been consolidated for discovery purposes, charges of securities fraud and a host of other claims have been brought against Loeb Rhoades & Co., Loeb Rhoades & Co., Inc. [hereinafter referred to, along with the subsidiary First Wall Street Settlement Corp., as "Loeb Rhoades"], and other defendants. In fifteen of those cases,[1] Loeb Rhoades has filed what it titles a "First Amended Counterclaim, Cross-Claim and Third Party Complaint." The parties against whom these claims run have moved to dismiss Loeb Rhoades' pleading.[2]

In the fifteen cases, Loeb Rhoades has been charged with violations of federal and Illinois securities laws, of the Investment Advisers Act, and of the Rules of the National Association of Securities Dealers, common law fraud, breach of contract, breach of fiduciary duty, and negligence. These cases range from single plaintiff, single defendant complaints to multiple plaintiff, multiple defendant complaints; several complaints include class allegations.[3] A number of plaintiffs are named as defendants by other plaintiffs in separate cases. Besides Loeb Rhoades, one other defendant has filed a cross-claim/third party complaint.

The allegations in the fifteen complaints encompass a variety of misconduct. Although these allegations vary from one case to another, in general the complaints allege that Loeb Rhoades, through its employee Jack Bernhardt, induced purchases of stock in Olympia Brewing Co. by misrepresenting that Olympia was about to be acquired by another corporation and that a tender offer was imminent. A number of plaintiffs further allege that Loeb Rhoades failed to adequately supervise Bernhardt and that after his discharge it concealed the reasons for his leaving. There are also allegations that Loeb Rhoades stimulated and maintained artificially high prices in Olympia stock, as well as in the stock of three other companies, Fay's Drugs, Inc., Stange Corp., and Lawry's Foods. Other plaintiffs allege that Loeb Rhoades manipulated the market to depress the price of Olympia stock through concerted short selling. Finally, several plaintiffs accuse Loeb Rhoades of unauthorized trading in their accounts and with failures to execute their sell orders. This brief overview of the cases gives some sense of the scope of the underlying litigation.

---

1. Loeb Rhoades filed counterclaims in all sixteen cases, but by prior order of this court, the counterclaim against the SIPA Trustee in Bankruptcy for Swift, Henke & Co. was dismissed. *J. William Holland v. Loeb Rhoades*, 78 C 388, Memorandum Opinion of May 22, 1981. Furthermore, the case of *Patrick Henry v. Loeb Rhoades & Co., Inc.*, No. 77 C 2704, was dismissed by stipulation on December 7, 1981.

2. Originally, the posture of this matter was a motion to file by Loeb Rhoades. Judge Crowley, to whom this case was previously assigned, determined that from a purely administrative point of view the best way to proceed was to allow leave to file and then to take motions from the opposing parties. Judge Crowley made it clear that he was not foreclosing any argument concerning the timeliness of the counterclaims. He merely wanted the parties to raise at one time the issues of timeliness and sufficiency, and "all of the other traditional matters that might be raised on a motion to dismiss." Tr. February 23, 1979, at 8.

3. The class certification issue is currently pending. The court deferred ruling on that issue until after decision on the motion to dismiss the counterclaim.

Loeb Rhoades's Counterclaim[4] contains seven counts. In Count I, Loeb Rhoades alleges that counterdefendants[5] conspired to, aided or abetted another to, or actually misused the trading and credit facilities of Loeb Rhoades in violation of the federal and Illinois securities laws. Count II alleges that the same conduct constitutes common law fraud. Count III alleges that if any plaintiff recovers against Loeb Rhoades, Loeb Rhoades is entitled to indemnity from all counterdefendants. Alternatively, in Count IV, Loeb Rhoades alleges that if any plaintiff recovers against it, each counterdefendant other than that plaintiff is jointly and severally liable under the principles of contribution.

Count V is a pendent contract claim and it alleges that each counterdefendant who maintained a brokerage account with Loeb Rhoades signed a Customer's Agreement by which that person agreed to reimburse Loeb Rhoades for any loss or expense incurred in connection with that person's account. In Count VI, Loeb Rhoades alleges that counterdefendants' conduct, as set out in Count I, constitutes a pattern of racketeering and that it has suffered injury as a result of such activity. In Count VII, Loeb Rhoades alleges that it is entitled to recoupment in the event that it is adjudged liable to any plaintiff.

As explained in detail below, the court grants plaintiffs' motions to dismiss Counts I, II, VI and VII. The motions are denied as to Counts III, IV and V, although the court limits the scope of these counts and requests Loeb Rhoades to file a second amended counterclaim incorporating those limitations.

### Timeliness

■ Loeb Rhoades first sought leave to amend its answer and file its counterclaim some nine months after the last of the sixteen cases against it had been filed. Plaintiffs/counterdefendants[6] strenuously argue that the counterclaim should be dismissed as untimely. The court, however, after considering the scope of this controversy and the number of parties involved, is persuaded that in the long run it is in the interests of the efficient administration of justice to reach the merits of the counterclaim. The court has decided on this course primarily because it is likely that the question of the alleged conspiracy or scheme to defraud will be litigated in these actions as a defense, regardless whether it is allowed as a counterclaim. To avoid even the possibility of a second round of lawsuits, the court is willing to consider Loeb Rhoades's claims in the instant actions.

This decision is "in line with the Federal Rules' overall goal of resolving disputes, insofar as possible, on the merits and in a single proceeding. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)." *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir. 1975). Accordingly, the court will proceed to the merits of each of Loeb Rhoades's claims.

### Securities and Common Law Fraud

■ In Counts I and II, Loeb Rhoades seeks to recover from counterdefendants on the basis of securities and common law fraud, respectively. Both counts share a common defect and both must be dismissed.

Loeb Rhoades alleges that between 1975 and the present, counterdefendants conspired to, aided others to, or did in fact misuse its trading and credit facilities. This misuse took the form of placing orders with no intention of completing the purchase on the settlement date, misrepresent-

---

**4.** For brevity's sake, the court will refer to the First Amended Counterclaim, Cross-claim and Third Party Complaint as the Counterclaim.

**5.** Loeb Rhoades uses this generic term to denote not only the "true" counterdefendants, those who are plaintiffs in actions against Loeb Rhoades, but also cross-defendants and third party defendants.

**6.** The main papers in opposition to Loeb Rhoades's counterclaim have been prepared by the Plaintiffs' Committee. Several individual counterdefendants filed separate memoranda with the court as well.

ing the amount of funds on hand to purchase securities, secretly borrowing funds to purchase securities, obtaining loans by pledging securities that could not be pledged, improperly extending credit to other counterdefendants, unlawfully forming a syndicate, and concealing these and other fraudulent acts from Loeb Rhoades.

Loeb Rhoades does not allege that any of these actions resulted in any loss to Loeb Rhoades. But it argues that to conceal this misconduct and "to shift the blame," plaintiffs/counterdefendants filed their suits against Loeb Rhoades and accused it of fraud. With respect to those counterdefendants who did not themselves file suit, Loeb Rhoades contends that they intended or reasonably foresaw that others would file suit against Loeb Rhoades. Loeb Rhoades alleges that it has suffered injury in the expense of defending these suits and in damage to its business reputation as a result of being named a defendant. It argues that these injuries were "caused" by counterdefendants' fraud.

In testing the sufficiency of the counterclaim, this court must, of course, accept as true the allegations in the complaint. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–349, 15 L.Ed.2d 247 (1965) (allegations of fraud and of resulting damage must be taken as true). This truism, however does not prevent the court from determining whether, as a matter of law, the damages claimed by Loeb Rhoades are the result of the fraud alleged. The issue here is one of causation. It is the relation of the damages claimed to any misconduct, not the fact or the existence of those damages, that is in question.

As the court views the amended counterclaim, Loeb Rhoades has alleged a fraudulent scheme in connection with the purchase or sale of securities, but no damages to it [7] as a result of that fraudulent scheme, and, conversely, it has alleged damages resulting from the filing of the sixteen lawsuits, but has not shown that these constitute fraud in connection with the purchase or sale of securities. The "weak link" in Loeb Rhoades's argument is the allegation that the lawsuits were filed to "cover up" counterdefendants' fraud. Assuming arguendo that this allegation is true, that does not make the "cover up"—the filing of the suits—fraudulent conduct *in connection with* the purchase or sale of any securities.

*Causation as an Element of Recovery*

■ A cause of action under § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 must allege fraud in connection with the purchase or sale of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975). Similarly, a cause of action under § 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), proscribes fraud in the offer or sale of any securities.[8] The two sections

---

7. Although it is not clear from the pleadings, Loeb Rhoades seems to be arguing that the losses that form the basis of the sixteen suits against it are the result of the counterdefendants' misconduct. As Loeb Rhoades did not suffer those losses, it cannot base its counterclaim on them.

8. These are not the only sections of the federal securities laws that Loeb Rhoades alleges counterdefendants violated, but the parties have concentrated on these two statutes in their memoranda.

For example, Loeb Rhoades also alleges violations of margin requirements, under § 7(f) of the 1934 Act, 15 U.S.C. § 78g(f). But the parties agree that this section also requires proof of proximate cause, e.g., *Landry v. Hemphill, Noyes & Co.*, 473 F.2d 365, 370 (1st Cir. 1973),

*cert. denied*, 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973).

The other sections of the federal securities laws that Loeb Rhoades contends counterdefendants violated are § 12(2) of the 1933 Act, 15 U.S.C. § 77*l*(2), and its related "controlling persons" section, 15 U.S.C. § 77o, and § 9 of the 1934 Act, 15 U.S.C. § 78i, and the "controlling persons" section of that Act, 15 U.S.C. § 78t(a).

Section 12(2) creates a cause of action for any person who purchases securities from the alleged violator. Loeb Rhoades has not alleged that it purchased any securities from any of the counterdefendants. *See E. L. Aaron & Co. v. Free*, 55 F.R.D. 401, 402 (S.D.N.Y.1972). Additionally, causation may be an element of any § 12 violation. *See Jeffries & Co. v. Arkus-Duntov*, 357 F.Supp. 1206, 1213 (S.D.N.Y. 1973). Section 9 creates liability for members

are essentially the same, although the reach of § 10(b) is broader. *Jackson v. Oppenheim*, 411 F.Supp. 659, 665 (S.D.N.Y.1974), *aff'd in part, rev'd in part*, 533 F.2d 826 (2d Cir. 1976). Because private rights of actions under these sections were judicially created, the statutes do not set out the elements of the cause of action. Courts and commentators, however, have read a causation requirement into any cause of action under the statutes. *See, e.g., Garnatz v. Stifel, Nicolaus & Co.*, 559 F.2d 1357, 1360 (8th Cir. 1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978) (defendant liable for such damages as naturally and proximately result from the fraud); *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1291 (2d Cir. 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970) (damages must be a proximate result of misleading statements); *Franklin Life Instrument Co. v. Commonwealth Edison Co.*, 451 F.Supp. 602, 607–08 (S.D.Ill.1978) *aff'd*, 598 F.2d 1109 (7th Cir.), *cert. denied*, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979) (necessary element is a causal relationship between the violation and the injury); *Miller v. Schweickart*, 413 F.Supp. 1062, 1067 (S.D.N.Y.1976) ("well-recognized" that fraud must be proximate cause of loss); Comment, "Civil Liability Under Section 10b and Rule 10b–5: A Suggestion for Replacing the Doctrine of Privity," 74 Yale L.J. 658, 661 (1965) ("obvious" that defendant's misconduct must cause plaintiff's injury).

    ■ Courts have also recognized that consequential damages are recoverable under the statutes. *E.g., Madigan, Inc. v. Goodman*, 498 F.2d 233, 238 (7th Cir. 1974). *Accord, Arrington v. Merrill Lynch, Pierce, Fenner & Smith*, 651 F.2d 615, 621 (9th Cir. 1981); *Foster v. Financial Technology, Inc.*, 517 F.2d 1068, 1071 (9th Cir. 1975); *Zeller v. Bogue Electrical Manufacturing Corp.*, 476 F.2d 795 (2d Cir. 1973), *cert. denied*, 414

U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973); *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1228–29 (10th Cir. 1970). In order to recover consequential damages, however, a plaintiff must establish the "requisite causal nexus." *Madigan, supra.* The plaintiff must show "with reasonable certainty that such damages were caused by the defendants' 10b–5 violation." *Foster, supra.*

In *Madigan*, the plaintiffs sought to recover various categories of consequential damages, including capital contributions and litigation expenses. Plaintiffs alleged that as a result of defendants' understatement of the available reserves for losses and loss adjustment expenses, they were induced to purchase stock in an insurance company that was in serious financial trouble. Upon discovering the true state of the insurance company's condition, plaintiffs made capital contributions to the company in an unsuccessful effort to prevent its insolvency. The plaintiffs were also forced to expend sums in defending the liquidator's suit against them after the insurance company went into bankruptcy.

In that suit, which was still pending at the time the Seventh Circuit issued its opinion in *Madigan*, the liquidator alleged that the insurance company was solvent when the plaintiffs purchased it and that they promptly "looted" it, leaving only a "corporate shell." The *Madigan* plaintiffs, however, managed to sell their stock at the same price for which they had purchased it.

The Seventh Circuit reasoned that, even though plaintiffs had suffered no loss as to the stock itself, they were "entitled to recover out-of-pocket consequential damages suffered *as a result of holding* [the] stock." 498 F.2d at 238, (emphasis added). The Court therefore held that capital contributions made in an attempt to save the company might be recoverable. The Court went on to state:

> Thus, the issue of causation, as argued under Sections 10(b) and 17, is crucial to Loeb Rhoades's alleged cause of action under the federal securities laws.

---

of a national securities exchange, brokers or dealers. Loeb Rhoades has not alleged that any counterdefendant satisfies this requirement. Absent liability under some other section, neither of the "controlling persons" sections creates any independent liability.

"We also hold that expenses from related litigation and damages from inability to plan as a result of that litigation are not recoverable. These damages are not a direct consequence of defendants' alleged fraud. Taking the complaint as true, these damages are a result of the liquidator's gross misperception of what actually happened. Defendants could not have foreseen that a third party would blame their fraud on the plaintiffs. Put another way, the chain of causation has been broken by the independent act of the liquidator."

498 F.2d at 239 (citations omitted).

Loeb Rhoades argues that the instant case is distinguishable from *Madigan* and therefore that the result reached there—the disallowance of related litigation expenses—is inappropriate here. Loeb Rhoades contends that in this case the filing of the lawsuits was not an independent act breaking the chain of causation because counterdefendants either themselves intended to or foresaw that others would blame the collapse of the Olympia stock on Loeb Rhoades. Thus Loeb Rhoades concludes that, unlike the *Madigan* case, its litigation expenses and related injuries to its reputation are a direct consequence of counterdefendants' fraud.

While recognizing that there are distinctions between this case and *Madigan*, the court is not persuaded that these differences mandate a different result. Taking the allegations in the counterclaim as true and assuming that all the counterdefendants agreed among themselves to file multiple actions against Loeb Rhoades, this conduct constitutes a second fraudulent scheme, independent of any scheme involving the purchase or sale of the Olympia and other securities.

The court does not hold that litigation expenses are never recoverable as consequential damages in securities fraud cases. But here, the fraud alleged—the illegal syndicate and its concealment, the illegal loans, etc.—does not lead directly and inevitably to the filing of the lawsuits against Loeb Rhoades, even by the alleged defrauders

themselves. The filing of the lawsuits, assuming it is baseless and fraudulent, constitutes a new and second fraud against Loeb Rhoades, separate and distinct from any fraud alleged in connection with the purchase or sale of securities.

The factual situation here is distinguishable from that in the other cases where courts have allowed consequential damages as well. In *Foster v. Financial Technology Inc.*, 517 F.2d 1068 (9th Cir. 1975), plaintiffs held liquidated claims against defendants. To settle these claims, defendants offered plaintiffs shares of stock in a subsidiary corporation, but the shares were never delivered. Plaintiffs brought suit, basing liability on the failure to register the sale of the shares and on certain alleged misrepresentations made by defendants to induce plaintiffs to agree to the transaction. While this suit was pending, the parent corporation entered bankruptcy proceedings.

The *Foster* court held that plaintiffs' complaint stated a claim for consequential damages under § 10(b). The court reasoned that plaintiffs could have realized more on their claims had they sued upon them before defendants offered them shares of stock in settlement, because the parent corporation was in a sounder financial condition at that time. The court concluded that defendants' conduct in misrepresenting the facts of the securities transaction, which conduct induced plaintiffs to forego the opportunity to recover on their claims at that earlier time, if proven, would be the cause of plaintiffs' loss and thus compensable under § 10(b).

In *Foster*, the conduct that constituted the alleged securities violation—the misrepresentations made to plaintiffs—is the same conduct that caused plaintiffs' loss. In the present case, the conduct that allegedly violates the securities laws is not the same conduct that is causing Loeb Rhoades's injuries.

The case of *Zeller v. Bogue Electric Manufacturing Corp.*, 476 F.2d 795 (2d Cir. 1973), *cert. denied*, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973), involved another

instance of "opportunity lost" consequential damages. In *Zeller*, a shareholder's derivative action, defendants were accused of forcing a subsidiary to make loans, evidenced by demand paper,[9] to its parent. Plaintiff claims that disclosure of these loans aborted a public offering of the subsidiary's shares. Although the parent corporation ultimately repaid the loan with interest, the court held that plaintiff was entitled to seek recovery of consequential damages.

The court allowed plaintiff's claim for two types of consequential damages, "what [the corporation] lost by not being able to make the public offering as originally scheduled," and any injury that the corporation could show resulted from the loss of the use of the funds involuntarily loaned to its parent. *Id.* at 803.[10]

In *Zeller*, the securities transaction itself—the forced loan—allegedly caused the injury—the postponement of the public offering and the loss of the use of the funds. Loeb Rhoades, however, has suffered no loss as a result of its making the securities transactions that were allegedly tainted by fraud.

The court in *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223 (10th Cir. 1970), did not speak in terms of allowing recovery of consequential damages, although that was the result of the court's ruling. In that case, the corporate defendant sold one wholly-owned subsidiary to another, both of which subsidiaries were in serious financial trouble. The parent then engineered a merger between the remaining subsidiary and another corporation in which the parent owned 43% of the stock, allegedly by failing to disclose that the surviving corporation was expected to pay off the debts of the two subsidiaries.

After trial, the court found that the evidence showed that the losses suffered by the new corporation were expected, indeed, that they were inevitable, and that defendants arranged the merger in order to shift those anticipated losses from the parent to the new corporation. Accordingly, the court allowed the plaintiff to claim as damages the losses suffered by the surviving corporation after the merger.

In *deHaas*, as in *Foster* and *Zeller*, the connection between the fraud charged and the damages claimed was direct and uninterrupted. But for the fraudulent merger, the surviving corporation would not have had the losses. Loeb Rhoades cannot claim, however, that but for the fraudulent scheme to misuse its trading and credit facilities, it would have been a defendant in the sixteen cases. That injury is the result of a separate fraudulent scheme, to cover up the original fraud by "pointing the finger" at Loeb Rhoades.

In an attempt to bolster its causation argument, Loeb Rhoades cites three cases in which litigation expenses were allowed because such expenses were the result of the defendant's fraud, *Hartford-Empire Co. v. Shawkee Manufacturing Co.*, 163 F.2d 474 (3d Cir. 1947); *Moraine Products v. ICI America, Inc.*, 379 F.Supp. 261 (N.D.Ill. 1974); and *Skelly Oil Co. v. Universal Oil Products Co.*, 338 Ill.App. 79, 86 N.E.2d 875 (1st Dist. 1949). These cases are inapplicable here because in each case a judgment was obtained that was tainted by fraud.

■ Both *Hartford-Empire* and *Moraine* involved prior patent infringement suits in which the patent had been obtained by fraud. The courts allowed as damages the expenses of litigating the prior patent infringement suits. In *Skelly Oil* the court allowed recovery of the litigation costs of an earlier suit where it was shown that a judge in that earlier case had been bribed. Here, Loeb Rhoades has not alleged, nor can it, that it has suffered an adverse judgment as the result of a fraud involving the judicial process.[11]

---

9. The court held that the demand paper constituted securities.

10. Both the *Foster* and *Zeller* courts expressed serious reservation regarding the plaintiffs' ability to prevail on their claims at trial.

11. Loeb Rhoades has alleged that the sixteen suits filed against it are baseless, and therefore

Similarly, Loeb Rhoades's citation of the body of case law holding that filing a lawsuit may constitute a violation of the antitrust laws, *e.g., California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1971), is inapplicable here. The cited body of law recognizes that the act of filing a lawsuit may be a restraint of trade, which is the gist of any antitrust violation. At least in the circumstances of the present cases, however, the filing of the lawsuits against Loeb Rhoades does not constitute fraudulent conduct *in connection with* the purchase or sale of any securities.

In summary, Loeb Rhoades's claim under the federal and state securities laws, as well as its claims of common law fraud, must be dismissed for failure to allege the requisite causal nexus between the alleged fraudulent scheme involving securities transactions and the injuries claimed.[12]

### The RICO Claim

■ Count VI of the Amended Counterclaim is based on the private right of action created by the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c). That statute provides in relevant part:

"Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate district court ...."

Section 1962 makes it unlawful for any person who has received income from a "pattern of racketeering activity" to invest that income in or otherwise control any enterprise affecting interstate commerce.[13] "Racketeering activity" includes any of-

fense involving fraud in the sale of securities, and "a pattern of racketeering activity" requires at least two acts of such activity.

The Seventh Circuit has held that "the Act is not restricted to members of organized crime, but can be used to reach out for others if the statutory conditions are met." *United States v. Aleman,* 609 F.2d 298, 303 (7th Cir. 1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980) (three robberies constitute pattern of racketeering activity). At least one district court has held that a remedy for securities fraud arises under RICO. *Farmers Bank of Delaware v. Bell Mortgage Corp.,* 452 F.Supp. 1278 (D.Del.1978).

The court need not decide whether the RICO statute encompasses the securities violations alleged by Loeb Rhoades in its counterclaim, because the RICO count suffers from the same defect as the securities counts: failure to allege facts establishing causation. The RICO statute permits recovery of any injuries to business or property resulting from the pattern of racketeering activity. The racketeering activity identified by Loeb Rhoades is the same fraudulent scheme to misuse its trading and credit facilities alleged in Counts I and II.

As explained in detail in the previous section of this opinion, the fraudulent conduct alleged did not result in any injury to Loeb Rhoades. The injuries Loeb Rhoades claims, the expense of litigation and damage to its reputation, did not arise "by reason of" the putative racketeering activity, the securities fraud, but resulted from the sixteen lawsuits filed against Loeb Rhoades. The court has determined that

---

presumably fraudulent. But Loeb Rhoades cannot bootstrap that allegation into a separate cause of action for securities fraud, in the absence of any showing that the filings were in connection with a securities transaction.

Moreover, under Illinois law, the only recognized cause of action for the fraudulent filing of a lawsuit is one for malicious prosecution or abuse of process. *Lyddon v. Shaw,* 56 Ill. App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d 685 (2d Dist. 1978). Loeb Rhoades has not alleged

facts constituting either of those causes of action.

**12.** The court's decision that these claims must be dismissed for lack of causation obviates the necessity of addressing the other objections raised by the various counterdefendants.

**13.** The section contains an exception in certain circumstances for securities purchased on the open market. There has been no indication whether this exception would be applicable in the present case.

filing the lawsuits is not fraud in connection with a securities transaction; thus the filings are not within the scope of racketeering activity under the RICO statute.

### Indemnity Count

Count III of the counterclaim states a claim for indemnity. Loeb Rhoades's theory is that, in the event it is held liable under the doctrine of respondeat superior for the misconduct of its former employee, Jack Bernhardt, then it is entitled to indemnification from those who allegedly conspired with Bernhardt.

■ Initially, plaintiffs argue that no independent basis for federal jurisdiction exists for the indemnity claim. As the court has dismissed the federal securities and RICO claims, the indemnity count cannot rely on pendent jurisdiction. To the extent the indemnity claim runs against codefendants (as a cross-claim) or against non-parties (as a third party claim), it falls within federal ancillary jurisdiction under Rules 13 and 14, Fed.R.Civ.P.[14] 3 Moore, *Federal Practice* ¶ 13.36; 14.26.

■■ Plaintiffs also contend that to permit indemnification in this case would violate public policy. The right to indemnity in cases involving federal securities violations is a matter of federal, not state, law. *Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946, 954 n.9 (S.D.N.Y.1975). It is well-settled that indemnification is not available for securities violations involving intentional or reckless misconduct, rather than ordinary negligence. *See, e.g., Globus*

*v. Law Research Services, Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). Some courts, however, have extended the rule against indemnification to cases involving only negligent conduct. *See, e.g., Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946, 956 (S.D.N.Y.1975); *Gould v. American Hawaiian Steamship Co.*, 387 F.Supp. 163, 167–68 (D.Del.1974).

The Seventh Circuit precedents on this question are not without ambiguity. In *Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979), the Court stated that: "A securities wrongdoer should not be permitted to escape loss by shifting his entire responsibility to another party." In its analysis, however, the Court relied on the fact that a violation of § 10(b) and Rule 10b–5 requires "scienter," or something more than mere negligence. Moreover, under the circumstances of that case, the party seeking indemnity was held to have been "at least" reckless. *Id.*

In *Madigan, Inc. v. Goodman*, 498 F.2d 233, 237–38 (7th Cir. 1974), the Court, although granting the claimant leave to amend, disallowed the indemnity claims because the claims as stated sought indemnity on a theory inconsistent with the theory on which the claimant's liability was based. The Court noted that: "If the . . . plaintiffs are too culpable to be entitled to indemnification, they may nevertheless be entitled to contribution." *Id.* at 238. This implies that there may be circumstances where a culpable plaintiff is nonetheless entitled to indemnity.

---

**14.** To the extent that the indemnity claim runs against a plaintiff in one of the cases against Loeb Rhoades, it arises from the same transaction that forms the basis of that plaintiff's claim and is compulsory, and therefore also within this court's ancillary jurisdiction. Counterdefendants argue, however, that to the extent the indemnity claim runs as a counterclaim, it is not mature and thus not a proper counterclaim. While several courts have taken the position that an unmatured claim cannot be asserted as a counterclaim under Rule 13, Fed. R.Civ.P., the better view is that espoused in *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78, 90 (S.D.N.Y.1973). In *Lynch* the court allowed a claim for contribution to stand, even though

not mature, because this furthered the basic design of the Federal Rules, "to encourage the litigation of all claims arising out of the same occurrences in the same lawsuit." *Id.*

The court does have grave doubts, however, whether a claim for indemnification may properly run as a counterclaim against any plaintiff. In all probability, if a plaintiff conspired with Bernhardt to defraud, this would defeat that plaintiff's right of recovery, whereas if the plaintiff prevails and he did not conspire to defraud, then the indemnity claim fails. *See, e.g., Madigan, Inc. v. Goodman*, 498 F.2d 233, 237 (7th Cir. 1974). But on the present state of the record, the court is reluctant to dismiss the indemnity claim even against the plaintiffs.

Applying these principles to the present case, Loeb Rhoades clearly may not seek indemnity for any liability based on its own intentional or reckless misconduct. This court is also disinclined to permit indemnification for any liability based on Loeb Rhoades's own negligence. *See Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946, 956 (S.D.N.Y.1975) (public policy objections to indemnity broad enough to cover negligent violations of securities laws, such as under § 12(2)). There yet remains the question whether Loeb Rhoades may seek indemnity for any liability it incurs solely under the doctrine of respondeat superior.

Courts have held that where a corporation is vicariously liable for the wrongdoing of its officers or employees, solely as a matter of law, it may seek indemnity from the actual wrongdoers. *See, e.g., Thomas v. Duralite Co.*, 386 F.Supp. 698, 727–28 (D.N.J.1974), *aff'd in part, rev'd on issue of corporation's liability*, 524 F.2d 577 (3d Cir. 1975), *aff'd without op.*, 559 F.2d 1209 (3d Cir. 1977); *deHaas v. Empire Petroleum Co.*, 286 F.Supp. 809, 816 (D.Colo.1968), *aff'd in part, rev'd on issue of punitive damages*, 435 F.2d 1223 (10th Cir. 1970). *Cf. Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946, 957 n.14 (S.D.N.Y.1975) (Court does not resolve whether defendant held liable without fault may recover indemnity, citing *Thomas, supra*). The reasoning in these cases would clearly allow Loeb Rhoades to assert its indemnity against its former employee, Bernhardt.[15] But Loeb Rhoades argues that this same principle enables it to seek indemnity from those who have allegedly conspired with Bernhradt.[16] *Cf. Carpenter v. Hall*, 311 F.Supp. 1099, 1113 (S.D.Tex.1970) (Court allowed, without discussion, indemnity claim by trustee against defendants who allegedly aided misconduct of bankrupt's employees).

In light of the above, the court concludes that Loeb Rhoades may seek indemnity from Bernhardt's alleged coconspirators for any liability based solely on the doctrine of respondeat superior.[17] To this extent, the motion to dismiss Count III of the Amended Counterclaim is denied.

### The Customer Agreement

Certain plaintiffs[18], customers of Loeb Rhoades, signed a form "Customer's Agreement and Consent to Loan of Securities," Paragraph Eight of which states:

"In the event any action or proceeding is commenced or claim or demand made by any person, firm, corporation or other entity against any account of the undersigned, or the securities or other property, therein, or against you in connection with such account, securities or other property, the undersigned agrees to reimburse you for any loss, cost or expense, including reasonable attorney's and accountant's fees, which may be incurred by you in connection therewith. In the event any such claim or demand is made, you shall be entitled to take such reasonable steps as you deem advisable, including the withholding of payment to the undersigned or any part or all of any such account, or the securities or other property therein, and the cancellation or noncompliance with all orders with respect to such account. Nothing herein contained shall be construed as an obligation on your part to take any steps in connection with any such action, proceeding, claim or demand."

In Count V of its Amended Counterclaim, Loeb Rhoades contends that this express indemnity provision enables it to recover

---

15. Similarly, with regard to the common law claims against Loeb Rhoades, Illinois courts have recognized the right of an employer to seek indemnity from its employees when liability is based on respondeat superior. *Stawasz v. Aetna Insurance Co.*, 99 Ill.App.2d 131, 240 N.E.2d 702 (2d Dist. 1968).

16. The counterclaim is vague as to who these coconspirators are; apparently, Loeb Rhoades

alleges that all counterdefendants are coconspirators.

17. This would not include liability based on Loeb Rhoades's negligent supervision of its employee.

18. These plaintiffs are listed in Count V of the Amended Counterclaim.

from the signing plaintiffs the expenses and losses caused by the filing of all sixteen lawsuits against it. Loeb Rhoades argues that all sixteen lawsuits are related to each of the signing plaintiff's accounts because each of the lawsuits was filed either as a continuation of the scheme to defraud Loeb Rhoades or by a third party nonconspirator as a result of the scheme to defraud.

■ There are several problems inherent in Loeb Rhoades's argument. Initially and primarily, as far as the federal securities violations asserted against Loeb Rhoades are concerned, the contractual indemnity provision is subject to the same limitations that pertain to Loeb Rhoades's common law indemnity claim in Count III. *See, e.g., Globus v. Law Research Services, Inc.,* 418 F.2d 1276 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). In *Globus,* an underwriter sought to pass on its liability for a misleading prospectus to the issuer on the basis of an indemnity contract. Despite the contract, the Second Circuit held that the underwriter could not obtain indemnity because its fault was greater than ordinary negligence.

As indicated in the preceding section, this court concludes that, with regard to the federal securities violations, public policy considerations prevent Loeb Rhoades from obtaining indemnity for any liability incurred as a result of its own fault. Whether Loeb Rhoades attempts to base its indemnity claim on general legal principles or on an express undertaking, the result does not change.

■ With regard to the common law claims asserted against Loeb Rhoades, an agreement to indemnify against willful misconduct is contrary to the public policy of Illinois, *Davis v. Commonwealth Edison Co.,* 61 Ill.2d 494, 500–01, 336 N.E.2d 881 (1975). However, under either New York or Illinois

law, a contract may provide indemnity against a party's own negligence. *E.g., Ahlvers v. Terminal Railroad Association of St. Louis,* 31 Ill.App.3d 166, 334 N.E.2d 329 (5th Dist. 1975); *Margolin v. New York Life Insurance Co.,* 32 N.Y.2d 149, 344 N.Y. S.2d 336, 297 N.E.2d 80 (1973).[19] Thus, regarding the common law claims, the agreement may also be unenforceable, depending on the quality of any wrongdoing by Loeb Rhoades.

■ Another problem with Count V is that the court fails to see any logical connection between the undertaking to reimburse contained in the Customer's Agreement and the all-inclusive liability Loeb Rhoades attempts to impose on each signing customer. By the plain language of the provision, each signing customer undertook to reimburse Loeb Rhoades for any expenses incurred in defending an action against that customer's account or against Loeb Rhoades *in connection with* that customer's account. When customer A sues Loeb Rhoades for fraud, in defending that suit Loeb Rhoades arguably incurs expenses in connection with A's account. But when customer B sues Loeb Rhoades for fraud, that has nothing to do with A's account, even assuming that A and B are coconspirators bringing baseless claims against Loeb Rhoades. Thus, there is no logical basis in the contractual agreement for Loeb Rhoades's claim that a signing customer must indemnify it for expenses incurred in defending actions in which that customer is not a plaintiff.[20]

Finally, the court has reservations regarding the applicability of the indemnity provision to the situation presented by this case, where the customer accuses Loeb Rhoades of fraud in connection with the customer's account. The language of the agreement may encompass such actions,

**19.** The Customer's Agreement itself calls for application of New York law, while the place of performance is Illinois. As the result does not vary between the two states, the court need not decide which state's law applies.

**20.** The situation becomes more complicated where customer A sues Loeb Rhoades and customer B. Is such a suit in connection with customer B's account? Conceivably, Loeb Rhoades could allege facts establishing such a connection. This is one area where an amendment to the counterclaim is in order.

however, as it speaks of a claim or action brought by "any person." The intent of the parties becomes relevant on this issue and this leads the court to conclude that it is not appropriate to resolve the question at this stage of the proceedings.

In summary, public policy considerations bar Loeb Rhoades from relying on the Agreement to obtain indemnity for any liability based on violations of the federal securities laws, with the exception of any vicarious liability. The Agreement may provide indemnity for common law liability not based on wilful misconduct, but only in those cases where the signing customer is a party. Subject to these limitations, the motion to dismiss Count V is denied.

### Contribution Claims

■ In Count IV of its Amended Counterclaim, Loeb Rhoades seeks contribution.[21] Plaintiffs argue, first, that this count must be dismissed because there is no independent basis of federal jurisdiction for this claim. But Loeb Rhoades alleges its contribution claim as either a crossclaim or a third party claim, and these fall within the court's ancillary jurisdiction.[22] 3 Moore, *Federal Practice* ¶ 13.36, 14.26.

■ As with the indemnity claims, the availability of contribution for violations of the federal securities laws is governed by federal, not state, law, but unlike indemnity, in this Circuit contribution is allowed in appropriate cases. *Heizer Corp. v. Ross*, 601 F.2d 330, 331–334 (7th Cir. 1979). To the extent Loeb Rhoades is found liable to any plaintiff for a federal securities violation, it may seek contribution from the remaining counterdefendants.

Whether Loeb Rhoades may also seek contribution for violations of state or common law presents a more difficult question. Initially, Loeb Rhoades contends that in

this case, federal law should govern the availability of contribution for all claims, relying on the case of *Kohr v. Allegheny Airlines, Inc.*, 504 F.2d 400, 403 (7th Cir. 1974), *cert. denied sub nom., Forth Corp. v. Allegheny Airlines, Inc.*, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975).

In *Kohr*, the Seventh Circuit held that the federal rule of contribution and indemnity should apply to claims arising from a mid-air collision because of "the predominant, indeed almost exclusive, interest of the federal government in regulating the affairs of the nation's airways." Loeb Rhoades argues that because of federal dominance in the securities field, the federal rule of contribution should apply to the pendent state and common law claims. Loeb Rhoades further contends that to hold otherwise would "deprive" Loeb Rhoades of its right to contribution under federal law solely because its conduct also allegedly constitutes a violation of state or common law. This argument is unpersuasive.

■ The securities field is not governed exclusively by federal law; state remedies are equally available. Moreover, whatever federal interest exists involving the securities field, this does not preempt any common law remedies for the same conduct. Finally, it is difficult to see how a prohibition against contribution for common law violations "deprives" Loeb Rhoades of its federal right to contribution, when contribution is available for any liability Loeb Rhoades may incur under the federal securities laws.

The parties disagree sharply on whether contribution is available here for the pendent claims under Illinois law. By statute, Illinois has recognized claims of contribution for "causes of action arising on or after March 1, 1978," Ill.Rev.Stat. ch. 70, § 301 et

---

**21.** Plaintiffs'/counterdefendants' argument, that the claim for contribution should be disallowed because Loeb Rhoades seeks to hold them liable "for the full amount" of any damages, is without merit. In this count, Loeb Rhoades alleges joint liability and seeks to share any liability found, not to shift it entirely as with indemnity.

**22.** As the court reads the Amended Counterclaim, Loeb Rhoades does not assert Count IV as a counterclaim. Count IV alleges that if Loeb Rhoades is found liable to any plaintiff, each counterdefendant "other than that plaintiff" is jointly and severally liable.

seq. Plaintiffs contend that this language refers to the underlying cause of action—that is, plaintiffs' claims against Loeb Rhoades—and that their causes of action arose before March, 1978. Conversely, Loeb Rhoades asserts that the statute refers to the date the cause of action for contribution arises, and that such cause does not arise until one tort feasor has paid more than its pro rata share of an adverse judgment.

No Illinois cases provide any guidance in construing this language. At this time, the court will allow Loeb Rhoades to state a claim for contribution under Illinois law. Plaintiffs, however, are given leave to raise the issue again prior to trial. By that time, the Illinois courts may have had an opportunity to construe the statute.

## Recoupment

In Count VII, Loeb Rhoades asserts a claim against counterdefendants "pursuant to principles of recoupment." Prior to the enactment of the Illinois Civil Practice Act, recoupment was in the nature of a cross-claim where the defendant alleged he was injured by plaintiff's breach of another part of the same contract on which the plaintiff's cause of action was based. Recoupment did not permit a recovery against the plaintiff; it only served to extinguish the plaintiff's cause of action. The Civil Practice Act, Ill.Rev.Stat. ch. 110, § 38, altered this, however; it abolished recoupment as a defense and requires it to be pleaded as a counterclaim. *Baiocchi v. Magidson*, 81 Ill.App.2d 387, 225 N.E.2d 732 (1st Dist. 1967); 33 I.L.P. Set-Off and Counterclaim § 2. Loeb Rhoades's allegation of recoupment without more does not constitute an independent grounds for recovery. Accordingly, this count is dismissed for failure to state a claim.

## Conclusion

Counts I, II and VI of Loeb Rhoades's Amended Counterclaim are dismissed for failure to allege facts establishing a causal nexus between the asserted misconduct and the injuries claimed. Count VII is dismissed for failure to state a claim. Counts III, IV and V, which allege claims for indemnity and contribution, are allowed subject to the limitations expressed in this opinion. In the interests of clarifying these claims, the court directs Loeb Rhoades to file a second amended counterclaim, cross-claim and third party complaint incorporating those limitations within thirty days.