**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,**

**v.**

**Marvin STAIMAN, Defendant.**

**Civ. A. No. 1:CV–90–0772.**

United States District Court,
M.D. Pennsylvania.

Aug. 15, 1991.

John J. Murphy, III, C. Clark Hodgson, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Clifford A. Rieders, Thomas Waffenschmidt, Williamsport, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

Before the court is defendant Marvin Staiman's motion to dismiss or alternatively for summary judgment. The motion has been briefed and is ripe for consideration.

*Background*[1]

This case presents a tangled web of facts, contentions, and allegations stretching over a period six years and wending its way into one other case before this court as well as other cases from one coast to the other. Plaintiff Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch," "Merrill") is a large, nationally known brokerage firm; defendant Marvin Staiman is the president of a family owned and operated scrap and recycling business in Williamsport, Pennsylvania. For years Marvin's father, Walter Staiman (also the founder, along with his brother, of the scrap and recycling business), had maintained a brokerage account at the Williamsport office of Merrill Lynch; Marvin held a similar account.

In February 1983, Jeffrey Staiman, Marvin's son, began working at Merrill Lynch in Williamsport as a broker. After a training period, Jeffrey began to service his own customers. Walter and Marvin both transferred their accounts to Jeffrey's care. Some time after he took the helm of Walter's account, which had historically focused on blue chip stocks and conservative trading, Jeffrey began to trade at an increasingly rapid pace on the options market.

In 1985, Marvin began to receive the monthly statements and confirmations for Walter's account; he also agreed to serve as attorney-in-fact for his father's account. In executing the power of attorney, Walter essentially conveyed to Marvin full power over the account. During 1985, apparently due to excessive options trading by Jeffrey, Walter's account was drained from a balance of over $500,000 in early 1985 to almost nothing by the end of the year.

Walter, who had moved to California, filed an action against Merrill Lynch in federal district court in that state. In the suit, Walter alleged that Jeffrey made unsuitable, unauthorized and excessive trades in his account. The suit was transferred to arbitration before the National Association of Securities Dealers ("NASD") in Los Angeles. The arbitration panel found Merrill Lynch liable to Walter Staiman's estate (Walter evidently died before the final disposition) in the amount of $370,653, and also found Jeffrey liable to Merrill Lynch for indemnification to the tune of $185,-326.50.

In April of 1990, Merrill Lynch commenced this action against Marvin Staiman for indemnification or, alternatively, for contribution. Merrill Lynch had evidently attempted to assert claims against Marvin in the California proceeding, but Marvin had declined to submit to jurisdiction and liability was imposed on Merrill Lynch without his presence. In the present case,

---

1. The following background information is culled from plaintiff's complaint and the statements of facts issued by both parties.

Merrill Lynch is essentially asserting that, as attorney-in-fact for Walter with regard to the brokerage account, Marvin had a duty to Walter which he breached and is therefore liable to Merrill Lynch either for indemnification or for contribution as a joint tortfeasor.

Since the filing of the suit, voluminous discovery has taken place. The period for discovery has now closed, and Marvin Staiman has fired back with a motion to dismiss, or, in the alternative for summary judgment.

*Discussion*

The standard for dismissal under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court must " 'take all well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff,' and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township*, 838 F.2d 663, 665–66 (3d Cir.1988) (quoting *Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 506 (3d Cir.1985)), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). "Because 12(b)(6) results in a determination on the merits at an early ... stage ..., the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

The court will address defendant's arguments against the indemnity and contribution claims as pleaded, then will address defendant's summary judgment arguments. As this case is before the court under diversity jurisdiction, the court will apply Pennsylvania law.

**I. The Indemnity Claim**

■ A tortfeasor who has been adjudged only secondarily liable to an injured party may, under the theory of indemnity, recover all or part of what he paid out from the person who is primarily liable. *Nationwide Mutual Ins. Co. v. Philadelphia Elec. Co.*, 443 F.Supp. 1140 (E.D.Pa.1977). Indemnity by operation of law is proper where a person is rightly accorded liability for a legal obligation due to no fault of his own while the primary culpability for the injury rests with another. *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 370 (1951). The *McCabe* court explained the concept of secondary liability thusly:

> Secondary liability exists, for example, where there is a relation of employer and employee, or principal and agent; if a tort is committed by the employee or the agent recovery may be had against the employer or the principal on the theory of respondeat superior, but the person primarily liable is the employee or agent who committed the tort, and the employer or principal may recover indemnity from him for the damages which he has been obliged to pay.

*Id.*

The crux of Merrill Lynch's claim in this regard is that though it was found liable in the California proceeding and eventually had to pay damages to Walter's estate, it was Jeffrey and Marvin who were primarily responsible for the damage done to Walter's account. Jeffrey, of course, has already been ordered to pay indemnity to Merrill Lynch. Marvin, plaintiff asserts, was likewise primarily responsible for the damage done to Walter's account in that he knew or should of known of the trading activity and the losses and did nothing as attorney-in-fact to put a stop to it.

■ Defendant's main attack on the indemnity theory is that indemnity is not available to a party who has some active fault in the damage done to the injured party. *McCabe*, 77 A.2d at 370. Here, Marvin Staiman argues, Merrill Lynch was adjudged liable for the losses in Walter's account by the California arbitration panel, and therefore cannot assert a claim for indemnity.

Merrill Lynch responds that the arbitration opinion does not list the findings of fault, but suggests that Merrill Lynch quite possibly was found liable on a strict *respondeat superior* theory for the misdoings of its employee Jeffrey Staiman. This would make Merrill only secondarily liable, and therefore not necessarily foreclosed from seeking indemnity from Marvin.

The court finds that the arbitration opinion is ambiguous enough as to conclude that the panel found Merrill Lynch merely vicariously liable for the conduct of Jeffrey, and not for the breach of its own duty. This does not mean, however, that defendant could not produce evidence of direct fault by Merrill Lynch at trial. It simply means that the court does not find that Merrill is, as a matter of law, barred from asserting an indemnity claim because it was itself negligent.

■ The court does find another aspect of the indemnity claim troubling, however. While the broad language of "primary" and "secondary" liability used by the *McCabe* court suggests that an indemnity cause of action may be appropriate under the facts as pleaded in this case, the court is nevertheless troubled in extending an indemnity claim so far. As the *McCabe* court wrote, indemnity

> is a right which enures to a person who, without active fault on his own part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.... [T]he important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of one primarily responsible.

77 A.2d at 370–71. Indemnity is a narrow form of relief extended in limited circumstances. Liability will not be shifted simply because another party bears some fault. In the present case, there was no direct relationship between Merrill Lynch and Marvin Staiman with regard to the Walter Staiman's brokerage account—their duties at most may be seen as co-extensive. In addition, if Marvin were negligent in watching over Walter's account as alleged in the complaint, he would not be the only tortfeasor involved. Merrill Lynch's employee Jeffrey was guilty of conduct which would be, at the very least, reckless, and quite possibly may have been fraudulent. Thus, the situation here is markedly different than the typical indemnification action, where a principal seeks indemnity from a culpable servant—here, liability has already been imposed on the servant and the master is seeking further indemnification from another alleged tortfeasor. The court has a great deal of difficulty swallowing the argument that Marvin is *primarily* liable for failing to uncover Merrill Lynch's employee's wrongdoings.

Plaintiff did not cite, and the court could not find in its own research, any Pennsylvania cases extending an indemnity claim from the principal of a tortfeasor agent against one who acted along with the agent in a culpable manner. Section 87 of the Restatement of Restitution does provide some guidance, however:

> Where an agent has committed a tort for which, because of the agency relation, his principal is liable, the principal's rights and liabilities with respect to restitution because of a payment in discharge of the liability are the same as if he had acted personally, except
>
> (a) in an action between himself and the agent, and
>
> (b) in an action between himself and a person also vicariously liable for the agent's tort or a person colluding with the agent in the commission of the tort.

Restatement of Restitution § 87 (1937). The comment states "Except as stated in Clauses (a) and (b), a master or other principal is barred from restitution for expenditures made to satisfy a liability incurred because of an act by a servant which, if done by the principal, would prevent resti-

tution from being granted." *Id.* at Comment a. According to the comment, indemnity is not appropriate where "the negligence of a servant unites with the negligence of one not a servant and the master has discharged the liability, he is not entitled to contribution from the other negligent tortfeasor." *Id.* Illustration 2 to the section presents the following scenario:

2. A is the servant of B. While in the scope of employment he negligently collides with C whose negligence also contributes to the to the collision. D, a bystander, is injured by the collision and obtains a judgment against B which B satisfies. B is not entitled to contribution from C.

*Id.* Therefore, it appears that although a master may recover against a servant for the servant's negligence, the master may not, because of the servant's negligence, recover against a joint tortfeasor. The situation described in the comment would appear to be directly applicable to the present case. Jeffrey is A, Merrill Lynch is B, Marvin is C, and Walter is D. In the case here, Merrill Lynch is alleging that its servant Jeffrey, through mis or malfeasance, caused injury to Walter's account. Merrill alleges that Marvin, through negligence or breach of various fiduciary duties, also contributed to the damage to Walter's assets (and, in fact, the situation here is made more pronounced by the apparent higher level of culpability of Merrill's employee Jeffrey). Following the rule of the Restatement, however, Merrill is not eligible to recover from Marvin Staiman for indemnity.

A case from the Eastern District of Pennsylvania, *Pennine Resources, Inc. v. Dorwart Andrew & Co.*, 639 F.Supp. 1071 (E.D.Pa.1986), bolsters the reasoning of the Restatement. In *Pennine Resources*, an auditing firm sued by a purchaser of corporate stock on negligence and breach of

contract theories attempted to implead a public accounting firm which had also performed accounting services for the corporation. The defendant/third party plaintiff charged that the third party defendant was liable for indemnity and contribution. The court dismissed the indemnity claim, finding that the third party defendant's alleged negligence in failing to detect overvalued inventory was "passive in nature" and was insufficient to conclude that the third party defendant was primarily liable. *Pennine Resources*, 639 F.Supp. at 1076. In the present case, Marvin Staiman, like the third party defendant in *Pennine*, stands accused of neglecting to detect improprieties in an account—an activity that the court refused to call active or primary. Comparing the levels of culpability here, the court is similarly disinclined to classify Marvin's actions the primary cause of the injury when Jeffrey's machinations were the real cause.

One case which could lend some support to plaintiff's contentions regarding indemnity is *Maryville Academy v. Loeb Rhoades & Co.*, 530 F.Supp. 1061, 1071 (N.D.Ill.1981). In that case, an Illinois district court permitted a defendant brokerage house to pursue a counterclaim against the co-conspirators of its employee in a fraud scheme (so long as the brokerage house was only found vicariously liable). However, *Maryville Academy* may be distinguished from the present case as plaintiff has not pleaded that any conspiracy existed between Marvin and Jeffrey.[2]

The court believes that the concept of indemnity as envisioned by the Pennsylvania courts and the Restatement of Restitution would not extend a cause of action to plaintiff given the allegations in the complaint. Accordingly, the court will dismiss plaintiff's indemnity claim.[3]

---

**2.** The court realizes that defendant has, in its brief, alluded to a coverup scheme between Marvin and Jeffrey, such a scheme is not alleged in the complaint and no amended complaint has been filed. As the complaint defines the issues before the court, the court must judge the sufficiency of the cause of action based on the allegations contained in that document.

**3.** In the first section of his brief, defendant argues that plaintiff has stated no cause of action for indemnity because defendant owed plaintiff no duty. The court believes that this "duty" argument is more properly framed in terms of primary and secondary liability.

## II. Contribution Among Joint Tortfeasors

■ Merrill Lynch also alleges that, even if an indemnity claim will not stand, Marvin Staiman is liable to it for contribution as a joint tortfeasor for the damage done to Walter's financial well-being. Under Pennsylvania law, a joint tortfeasor may as a matter of right seek a *pro rata* share of a tort victim's loss from another joint tortfeasor. *Lasprogata v. Qualls*, 263 Pa.Super. 174, 397 A.2d 803, 805 (1979). Pennsylvania's Uniform Contribution Among Tortfeasors Act states that joint tortfeasors are "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.Cons.Stat. § 8322. In committing the tortious action, the conduct of joint tortfeasors is such that it "causes a single harm which cannot be apportioned ... even though [the actors] may have acted independently." *Capone v. Donovan*, 332 Pa.Super. 185, 480 A.2d 1249, 1251 (1984). Therefore, independent acts must unite to cause a single injury, and the actors must owe the injured party similar duties. *Lasprogata*, 397 A.2d at 805. There is no joint tort where the "acts of the [wrongdoers] are severable as to time, neither having the opportunity to guard against the other's acts, and each breaching a different duty owed to the injured plaintiff." *Id.*

Marvin Staiman attacks Merrill Lynch's contribution claim with the argument that the duties owed to Walter by Merrill and by Marvin were different, and therefore the two could not be joint tortfeasors. Defendant cites Merrill's complaint for a definition of Marvin's duties as envisioned by plaintiff: 1) a duty to ensure that the trades made in Walter's account were consistent with his goals and objectives; 2) a duty to review trades for proper authorization; 3) a duty to object to trades which were unauthorized or unsuitable; and 4) a duty to exercise due care in the handling of Walter's account. Complaint at ¶ 21. Defendant contrasts these obligations with those that the courts of Pennsylvania have ruled that a broker owes its customers, duties which go more toward openness to the client about various transactions and duty against self-dealing. *See Merrill Lynch v. Perelle*, 356 Pa.Super. 165, 514 A.2d 552, 561 (1986). Therefore, concludes defendant, the duties owed by the parties here are "actually totally different."

■ The court, however, is not convinced by this argument. The duties of the respective parties must be defined in context. In the arbitration case, Walter Staiman's estate sued under several securities law sections and the Racketeering Influenced and Corrupt Organizations Act, as well as common law claims for fraud, negligent misrepresentation and breach of fiduciary duty. The issue of Merrill Lynch's review and approval of trades was apparently brought up, if not explicitly by the estate, then by third party defendant Jeffrey Staiman. According to the "Summary of Issues" section of the arbitration opinion, Jeffrey stated that all trades were "subject to review and specific approval by the Williamsport branch manager Louis Elia...." Therefore, it appears that the arbitration panel did consider the existence of a general fiduciary duty on the part of Merrill Lynch—the duty to catch unauthorized trading and the churning of accounts—and whether the firm breached that duty. Whether liability was imposed on Merrill due to a breach of this fiduciary duty or due to violations of the other statutes (securities laws, for instance) is not apparent from the opinion of the arbitrators. At any rate, this court is satisfied that the duties of the parties in this action with regard to Walter Staiman's account are sufficiently similar to allow for the imposition of joint liability, depending, of course, on the findings of the jury. Accordingly, plaintiff will be permitted to proceed on this issue.

## III. Summary Judgment Motion

■ The standards for the award of summary judgment under Federal Rule of Civil Procedure 56 are well known. As the Third Circuit Court of Appeals recently capsulized:

Summary judgment may be entered if "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.*, 812 F.2d 141, 144 (3d Cir.1987). If evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511; *Equimark*, 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). Once the moving party has shown that there is an absence of evidence to support the claims of the nonmoving party, the nonmoving party may not simply sit back and rest on the allegations in his complaint, but instead must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court will consider defendant's motion under these standards.

Defendant's summary judgment argument here is essentially that Marvin Staiman was in no position to monitor and guard against the actions which resulted in the demolition of Walter's account at Merrill Lynch. Therefore, defendant concludes, under *Laspragota's* requirement that a jointly negligent tortfeasor have the opportunity to protect against the conduct of the other tortfeasor, defendant can not be held liable.

Marvin argues that it is undisputed that he was not knowledgeable in the area of securities and investments, and that he had left oversight of Walter's account to family accountant Harold Hurwitz and Jeffrey Staiman. Accordingly, Marvin was not privy to any information concerning the trades nor would he have had the tools to interpret if he was aware of the activity in Walter's account.

Plaintiff counters that Marvin did indeed have the opportunity to guard against the wrongful acts attributed to Merrill Lynch. Marvin was the attorney-in-fact for the account, they point out, and was in direct communication with Walter. He was also well aware of Walter's objections regarding options trading. Moreover, they state, Marvin received monthly account statements and written confirmations of every daily trade in Walter's account.

The court believes that there is sufficient evidence on both sides to make this ability to counteract the misdoings in Walter's account an issue of fact for the jury. Accordingly, it will not grant summary judgment on this issue.

## ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT defendant's Motion to Dismiss or in the Alternative for Summary Judgment is GRANTED IN PART and DENIED IN PART:

1) Count I of plaintiff's complaint is dismissed;

2) Count II shall remain in the action.